## PLUMMER *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 177.   Argued February 29, March 1, 1912.—Decided April 1, 1912.

Under § 13 of the Navy Personnel Act of March 3, 1899, 30 Stat. 1007, c. 413, and the acts of June 7, 1900, 31 Stat. 697, c. 859, March 2, 1907, 34 Stat. 1167, c. 2511, and May 13, 1908, 35 Stat. 127, c. 166, the pay of acting assistant surgeons was enhanced and assimilated to that of assistant surgeons in the Army, and did not remain fixed as regulated by § 1556, Rev. Stat.

Where an act of Congress, such as the Navy Personnel Act of 1899, provides for a standard by which to determine rank and pay of officers, it will not be presumed that Congress intended to create an inequality of compensation while leaving unmodified equality of rank and duty, and so held as to the provisions for pay of assistant surgeons and acting assistant surgeons in the Navy.

The construction of the statutes involved in this case is the contemporaneous construction given thereto by the Executive Department charged with execution of the provisions thereof.

Longevity pay of officers of the Army and Navy under the act of May 13, 1908, 35 Stat. 127, c. 166, is computed on the sum of the base pay and not the base pay and previous increases thereof.

Where Congress, after a decision of this court construing a certain expression used in a statute, passes a statute declaring that those

words shall be construed as having a definite meaning different from that given by this court, that expression, when used in a later statute on the same subject, will be presumed to have the meaning so given to it by Congress and not that previously given by this court.

Congress having by the act of June 30, 1882, 22 Stat. 118, c. 254, expressly provided that the current yearly pay on which longevity pay of officers of the Army and Navy is to be computed is base pay, and not base pay and increases, so as to overcome the construction given to the words "current yearly pay" by this court in *United States* v. *Tyler*, 105 U. S. 44, those words will be construed in the same manner when used in the subsequent act of May 13, 1908, 35 Stat. 125, c. 166, and not as construed in *United States* v. *Tyler*.

45 Ct. Cl. 614, reversed.

THE facts, which involve the construction of the provisions of acts of Congress relating to pay of acting assistant surgeons in the Navy, are stated in the opinion.

*Mr. George A. King,* with whom *Mr. William B. King, Mr. William E. Harvey* and *Mr. Archibald King,* were on the brief, for appellant.

*Mr. Frederick De Courcey Faust,* with whom *Mr. Assistant Attorney General John Q. Thompson* was on the brief, for the United States.

*Mr. Hilary A. Herbert, Mr. Benjamin Micou* and *Mr. Richard P. Whiteley* filed a brief on behalf of certain officers of the Navy.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This appeal is from a judgment of the Court of Claims denying the right to recover from the United States an alleged balance of compensation claimed to be due for services rendered as an acting assistant surgeon, at the Naval Station, Key West, Florida, from July 1, 1903, to July 1, 1909.

By an act approved May 4, 1898, 30 Stat. 369, 380, c. 234, the President was authorized "to appoint for temporary service twenty-five acting assistant surgeons, who shall have the relative rank and compensation of assistant surgeons. When the act of 1898 was passed the pay of officers in the naval service was generally regulated by § 1556, Rev. Stat., and the pay of an assistant surgeon for shore duty was fixed at $1,400 a year. By § 13 of the Naval Personnel Act of March 3, 1899, 30 Stat. 1004, 1007, c. 413, it was provided that commissioned officers of the line of the Navy and of the Medical and Pay Corps "shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law, for the officers of corresponding rank in the Army;" and in a proviso it was declared "That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty." The effect of this act was to increase the pay of naval officers generally, and therefore to enhance the pay of assistant surgeons.

The act of June 7, 1900, 31 Stat. 697, c. 859, raised the rank of assistant surgeons in the Navy by providing that "Assistant Surgeons shall rank with Assistant Surgeons in the Army." We say that this act raised the rank of assistant surgeons in the Navy for the following reasons: Prior to that act the rank of assistant surgeon in the Navy upon entrance into the service was that of ensign. (Rev. Stat., § 1474.) As by Rev. Stat., § 1168, the lowest rank of an assistant surgeon in the Army during the first three years of service was that of a lieutenant of cavalry, the effect of the act of 1900 was therefore to give to assistant surgeons in the Navy a higher rank, that is, to raise them from the rank of ensign to that of lieutenant, junior grade.

On December 29, 1902, the Surgeon General of the Navy published a circular soliciting applications for appointment "as acting assistant surgeons for three years

of service," and in the circular, among other things, it was stated as follows:

"The Secretary of the Navy, in order to meet the exigencies of the service, has authorized the appointment of 25 acting assistant surgeons for three years' service, to have the same rank and pay as assistant surgeons in the regular service.

The pay is as follows:

| | |
|---|---|
| At sea .................:.......... | $1,650.00 a year. |
| On shore, with quarters ..... | 1,402.50    " |
| On shore, without quarters.. | 1,690.50    "   " |

Plummer applied for appointment, and was commissioned by the President as an acting assistant surgeon in the naval service, to serve for three years from July 1, 1903. After the expiration of the first appointment he was reappointed for another term of three years, and his commission under the first and second appointment stated his rank to be that of lieutenant, junior grade.

During Plummer's second three year period of service two acts were passed which it is claimed enhanced the compensation of assistant surgeons, viz.: An act approved March 2, 1907, 34 Stat. 1158, 1167, c. 2511, and an act approved May 13, 1908, 35 Stat. 127, 128, c. 166. By the act of 1907 assistant surgeons were allowed heat and light for quarters and commutation for the same. By the act of 1908, the pay of a lieutenant, junior grade, the relative rank of an assistant surgeon, was fixed at $2,000.

During the term of both services Plummer was paid not at the rate provided by law for the pay of assistant surgeons at the time his services as acting assistant surgeon were rendered, but at the rate of pay which was fixed for assistant surgeons at the time the act of 1898 was passed. That is to say, despite the change in rank and pay of assistant surgeons in the Navy brought about by the legislation subsequent to 1898, Plummer was paid

upon the theory that those changes had no effect upon the pay of acting assistant surgeons, and therefore they were entitled only to the sum which was allowed by law (Rev. Stat., § 1556) at the time the appointment of acting assistant surgeons was provided for.

By an express finding of the court below, as to which there is no dispute, if Plummer had been paid at the rate fixed by law for assistant surgeons at the time his services as acting assistant surgeon were rendered he would have been entitled, irrespective of the question of longevity pay as to which there is dispute, to $1,814.78 more pay than he received; to $2,007.20, as commutation of quarters, and to $341.88 for heat and light for quarters under the act of March 2, 1907, in all $4,213.86. Whether, therefore, an acting assistant surgeon under the legislation to which we have referred was entitled to be paid as his services were performed at the rate then fixed by law as the pay and allowance of an assistant surgeon, and what was the proper basis for the calculation of longevity pay, are the two questions requiring solution.

The court below based its conclusion that the acting assistant surgeon was only entitled to the pay which was allowed assistant surgeons at the time of the passage of the act authorizing the appointment of acting assistant surgeons, and, hence, that acting assistant surgeons got no benefit from subsequent increases of the pay of assistant surgeons, upon two previous decisions to that effect— James S. Taylor (38 Ct. Cl. 155), and Hugh T. Nelson (41 *Ibid.* 157).

The reasoning of the court was thus expressed in the *Taylor Case* (p. 161):

"In the act of March 3, 1899, we fail to find any express provision applying to officers of the Navy in the temporary service. That was 'An act to reorganize and increase the efficiency of the personnel of the Navy and the Marine Corps of the United States,' evidently referring

to the officers of the Regular Navy, as it certainly could not be contended that the Congress had in view the re-organization of the officers in the temporary service, or that by that act they intended to incorporate them into the permanent service. On the contrary, it was not until the act of June 7, 1900, that provision was made for continuing them in the service by permanent commissions. Those who received commissions in the permanent service prior to that act did so presumably after a proper examination and approval by the board of naval surgeons designated by the Secretary of the Navy under the act of May 4, 1898."

But conceding the correctness of the premise upon which the reasoning just quoted rests—that is, the purpose of the Naval Personnel Act to deal with the standard of pay of the regular naval establishment—we think it is not conclusive or even in any degree persuasive of the question here for decision, which is not what was the purpose of Congress in fixing a standard for the pay of the regular naval establishment, but whether that standard as fixed must be resorted to for the purpose of determining the pay of acting assistant surgeons. The solution of that question must primarily be found within the text of the act of 1898, and as that text expressly gives to the acting assistant surgeons whose appointment it provides for the relative rank and compensation allowed by law to assistant surgeons, it must follow that in the absence of an express provision or a necessary implication to the contrary in the statute fixing the pay of assistant surgeons such standard became the measure by which the pay of the officers provided for in the act of 1898 was to be ascertained and allowed. In other words, as the act of 1898 provided for a standard by which to determine the rank and pay of the acting assistant surgeons—that is, the rank and compensation allowed assistant surgeons—in the nature of things it provided not for the application

of a non-existing or obsolete standard, but for an existing standard—that is, the rank and pay in force at the time when the services of the acting assistant surgeons were rendered. Looked at from a broader point of view—that is, testing the subject from a consideration of the obvious intent and purpose of the act of 1898—the same conclusion becomes necessary. It may not be doubted that the relation which the act of 1898 established between the rank and pay of acting assistant surgeons and assistant surgeons in reason must rest upon the substantial identity of the services to be rendered by the incumbents of both offices. This being true, it of course necessarily also is true that a mere increase of the compensation of assistant surgeons without any change between the duties of those officers and the duties of acting assistant surgeons cannot justify the implication unless there was a clear manifestation of the purpose to do so—that it was the intention of Congress to create an inequality of compensation while leaving unmodified equality of rank and duty.

That the view which we take of the act of 1898 was also the contemporaneous administrative construction given to the act plainly results from the circular of the Surgeon General under which Plummer was appointed, since the pay stated in that circular was not that fixed in § 1556, Rev. Stat., but was the sum fixed as the pay of assistant surgeons in the Navy at the time the circular was issued. Indeed that such also must have been the view entertained by the President when Plummer was commissioned obviously is shown by the fact that Plummer was commissioned as a lieutenant, junior grade, the rank of an assistant surgeon at the time of his appointment, and not as an ensign, the rank accorded to assistant surgeons at the time when the act of 1898 was adopted.

The controversy as to the sum of the longevity pay arises from a portion of the text of the act of May 13, 1908, 35 Stat. 127, 128, c. 166, reading as follows:

"There shall be allowed and paid to each commissioned officer below the rank of rear admiral ten per centum of his current yearly pay for each term of five years' service in the Army, Navy, and Marine Corps. The total amount of such increase for length of service shall in no case exceed forty per centum on the yearly pay of the grade as provided by law."

It is insisted that as the words "current yearly pay," as employed in Rev. Stat., § 1262, were construed in *United States* v. *Tyler*, 105 U. S. 244, to require that the calculation of the longevity pay should be made, not upon the sum of the base pay, but on the base pay and previous increases thereof, that the same rule must be applied to the words as used in the provision of the statute above quoted. But, subsequent to the *Tyler Case*, by the act of June 30, 1882, 22 Stat. 118, c. 254, Congress expressly directed that the ten per cent longevity increase provided for in § 1262, Rev. Stat., should be "computed on the yearly pay of the grade. . . ." That this act was passed for the express purpose of commanding a method of computation which would render inapplicable the construction adopted in the *Tyler Case* is not open to controversy. *United States* v. *Miller*, 208 U. S. 32, 38. Indeed, that from the date of the act of 1882 down to the present time the longevity pay of Army officers has been computed by the method directed by the act of 1882 is not controverted. In view of the purpose of Congress to equalize as far as possible the pay of Army and Navy officers, manifested by the adoption of the Navy Personnel Act of 1899 and in all subsequent legislation as to such pay, we think it plainly results that the provision relied upon must be held to have been adopted with reference to the settled rule prevailing for so many years, a rule consequent upon the act of 1882. In other words, we think it may not be doubted that the intention of Congress in the provision relied upon was that the longevity pay therein prescribed should be com-

puted according to the methods then prevailing, and which had resulted from the enactment of the statute of 1882.

Judgment reversed and cause remanded, with a direction to enter judgment in favor of claimant for $4,213.86.