[Civ. No. 3527. First Appellate District, Division Two.—July 29, 1920.]

JAMES AITKEN, Petitioner, v. THEODORE ROCHE et al., as Police Commissioners, etc., Respondents.

[1] MUNICIPAL CORPORATIONS — SAN FRANCISCO — POLICE PENSION — VESTED RIGHT.—Under the charter of the city and county of San Francisco, the right to pension is a vested one, and it enters into the contract of employment when a man enters the police department.

[2] ID.—AMOUNT OF POLICE PENSION—CONSTRUCTION OF CHARTER.— Under chapter X, article VIII, section 3, of the charter of the city and county of San Francisco, pensioned members of the police department are entitled to one-half of the pay attached to their retirement rank when pension installments successively become due, and not one-half of the pay which was attached to that rank when they were retired.

[3] ID.—PENSION STATUTES—LIBERAL CONSTRUCTION.—Pension statutes are to be liberally construed.

---

1. Vested right in policemen's pension, notes, Ann. Cas. 1915C, 751; 50 L. R. A. (N. S.) 1019.

Power to require municipality to pension policemen, notes, Ann. Cas. 1912C, 545; Ann. Cas. 1918D, 454; 34 L. R. A. (N. S.) 608.

APPLICATION for a Writ of Mandate to compel the San Francisco Police Commissioners to honor petitioner's demand upon the police relief and pension fund. Writ granted.

The facts are stated in the opinion of the court.

Moran & Moran for Petitioner.

George Lull, City Attorney, and Milton Marks, Assistant City Attorney, for Respondents.

BRITTAIN, J.—The petitioner seeks by *mandamus* to require the board of trustees of the police relief and pension fund of the city and county of San Francisco to allow his demand for an amount of money in excess of that to which it is conceded he is entitled. The defendants demur generally to the sufficiency of the petition. A single question of law is presented and it is determinative of the petitioner's right.

The petitioner became a member of the police department in 1880, and served continuously until 1903, when he was retired on account of physical disability received in the performance of his duty, and since that time he has been on the pension-roll, he having been retired while he was holding the rank of patrolman. At the time of retirement the pay of a patrolman was $102 a month. By a charter amendment, adopted at the election of 1918, and approved by the legislature January 21, 1919 [Stats. 1919, p. 1391], the pay attached to the rank of patrolman was increased to $140 a month. The charter provides that members of the police department may be retired, as the petitioner was, "upon an annual pension equal to one-half of the amount of salary attached to the rank which he may have held three years prior to the date of such retirement, to be paid him during his life and to cease at his death. *In case his disability shall cease his pension shall cease, and he shall be restored to the service in the rank he occupied at the time of his retirement.*" (Charter, art. VIII, c. 10, sec. 3.) The sole question is whether or not pensioners are entitled to one-half of the pay attached to their retirement rank when pension installments successively become due or to one-half of the pay which was attached to the rank when they were re-

tired. It is alleged that over one hundred such pensioners are concerned in this proceeding.

[1] On behalf of the defendants it is correctly stated that the right to pension is a vested one, and that it enters into the contract of employment when a man enters the police department. (*O'Dea* v. *Cook,* 176 Cal. 659, [169 Pac. 366].) [2] From this it is argued that the amount of the prospective pension is fixed. This is fallacious, because if it .were as the defendants contend, an increase in salary while a man was on active duty would not carry with it, as it does, the right to a correspondingly increased pension upon his subsequent retirement. Under such circumstances there would be no difficulty in determining that the right which was vested is the right to have the pension, not of a particular number of dollars, but "equal to one-half of the amount of salary attached to the rank," whether it should be more or less than that attached to the rank when the contract of employment was made. A similar contention, made in regard to another sort of contract, would be swept aside with little consideration. Suppose, for instance, the owner of an office building should lease it for a term of years, reserving as rent a sum equal to one-half of the gross rentals received by the tenant from subtenants, and it were shown that the .gross rentals either increased or decreased in subsequent years. The right to a sum equal to one-half of those rentals would be vested, but neither party could successfully contend that the change in the amount of gross rentals warranted any change in the proportionate amount of money to be paid to the owner of the building.

Reliance is placed by the defendants upon an opinion of a former city attorney (Opinion, City Attorney, Percy V. Long, Jan. 20, 1908) from which, in their brief, a quotation is made: "Since the amount of the pension attaches to the rank and not to the salary, the effect of increasing the salary of any rank necessarily means a permanent increase so far as to carry one-half of it over in the form of a pension to such retiring officer or man. The pension is increased because the salary is increased. *The amount of the pension is made in terms one-half of the amount of salary attached to the particular rank. A new salary under Amendment No. 20 having attached to a particular rank, a pension amounting to one-half the new salary immediately attaches upon*

*the retirement of the officer or man.''* This was all that was necessary to sustain the action based on the opinion of the city attorney, and fully supports the views hereinbefore- expressed. The quotation, however, goes further, the following being added: "Since the salary of only those officers and men who were in the active service of the department was increased by Amendment No. 20, it follows, of course, that only such portion of the police force (and not those who were pensioned and retired before the amendatory legislation) is entitled to an increase of pension based upon such increase of salary.'' This quotation supports the contention of defendants.

A similar question has arisen in regard to the pay of retired officers of the United States army. The case is not exactly parallel, but the reasoning upon which the supreme court of the United States reached a conclusion opposed to that expressed in the opinion of the city attorney applies with equal force to this case. A statute of the United States provided that "Officers retired from active service shall receive seventy-five per centum of the pay of the rank upon which they were retired'' [U. S. Rev. Stats., sec. 1274; 5 Fed. Stats. Ann., 2d ed., p. 1209; U. S. Comp. Stats., sec. 2138]. Another section of the same statute provided that "There shall be allowed and paid to each commissioned officer below the rank of brigadier-general . . . ten per centum of their current yearly pay for each term of five years' service'' [U. S. Rev. Stats., sec. 1262; 9 Fed. Stats. Ann., 2d ed., p. 1192; U. S. Comp. Stats., sec. 2099]. Said the supreme court, speaking by Mr. Justice Miller: "The question is, therefore, whether an officer thus situated is in the service within the meaning of section 1262. That section allows an increase of pay for every five years' service. When the service ends, there can be no increase on that account. As long as the service continues, the increased pay applies whenever it amounts to five years.''

It will be noted that the opinion of the city attorney is based on the fact that retired men are no longer in the service. Said Mr. Justice Miller: "The law under which these officers are retired does not require their consent, nor does it require that the order for their retirement shall be based upon any absolute incapacity for further service. It may be based upon age, which, being fixed at a minimum of

sixty-two years, by no means implies such incapacity. It may be based upon wounds received in battle, but the person retired for this cause may, for many purposes, be a very useful officer." After reciting certain other provisions of the statutes under which such retired officers are permitted to wear uniforms and may be required to perform special service or return to active duty, and in which they are spoken of as officers of the army on the retired list, Mr. Justice Miller continued: "It is impossible to hold that men who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, who are subject to the rules and articles of war, and may be tried, not by a jury, as other citizens are, but by a military court-martial, for any breach of those rules, and who may finally be dismissed on such trial from the service in disgrace, are still *not* in the military service.

"If Congress chose to provide for their qualified relief from active duty, and for a diminished compensation, it did not discharge them from their other obligations as part of the army of the United States. And if, because they were not required to do full service thereafter, their compensation was diminished by the statute twenty-five per cent, that is no reason why the accounting officers should add a further limitation of pay not found in any statute.

"We are of opinion that retired officers are in the military service of the government, and that the increased pay of ten per cent for each five years' service applies to the years so passed in the service after retirement as well as before." (*United States* v. *Tyler*, 105 U. S. 244, [26 L. Ed. 985, see, also, Rose's U. S. Notes].)

In the O'Dea case it was held that the right to a pension entered into the contract of the employment of a policeman. The charter provides that the "Police Department shall consist of a Board of Police Commissioners, a Chief of Police, a Police Force and of such clerks and employees as shall be necessary to carry into effect the provisions of this Article." (Charter, art. VIII, c. 1, sec. 1.) Section 2 of the same chapter provides that "All members of the Police Department shall hold office during good behavior, subject to the provisions hereinafter set forth relating to promotions,

suspensions, dismissals and disratements.'' Chapter 7 relates to promotions, suspensions, dismissals, and disratements, and provides for charges and trial for punitive purposes. Chapter 10 relates to the police relief and pension fund. Section 3 contains the provisions in question in this case. Section 5 provides that ''Any person receiving a pension . . . who shall be convicted of felony, shall become dissipated, an habitual drunkard, or shall become a non-resident of this state, shall forfeit all right to said pension.'' Section 7 provides that ''The Commissioners shall make rules and regulations to carry out the provisions of this Chapter and to enforce compliance therewith on the part of members of the Department.'' Section 10 vests in the board of pension fund commissioners the powers of the board of police commissioners to make rules and regulations for its guidance. It has been shown that in case the disability of the pensioner shall cease he shall be restored to service.

These provisions of the charter would seem to bring the case clearly within the reasoning of Mr. Justice Miller in *United States* v. *Tyler.* Paraphrasing his statement: ''It is impossible to hold the men who are by the charter declared to be a part of the police force, who may be reassigned to duty, who are subject to the rules of the police department and who may be tried for offenses against those rules, and for drunkenness, and required upon conviction, to forfeit their vested right to a pension, are still not in the police department.''

This conclusion is supported by the language of the charter itself. Section 2 of chapter 10, relating to the police relief and pension fund, provides for the retirement of aged, infirm or disabled members of the department and contains the following clause: ''Such *retired member* shall receive . . . a monthly pension . . . No such pension shall be paid unless such person has been an *active member* of the department for twenty years continuously next preceding his retirement, and the same shall cease at his death.'' Again, in section 6 of the same chapter, which provides a benefit for the widow or children of a member of the department who dies from natural causes, it is further provided that ''the provisions of this section shall not apply to any *member of the Department* who shall have received any pension under the terms of this Chapter.''

The supreme court has decided that a retired officer who has not resigned or been dismissed still remains a member of the department. (*Kavanagh* v. *Police Pension Fund Commrs.*, 134 Cal. 53, [66 Pac. 36].) Under the provisions of section 2 of chapter 1, relating to the police department, a member of the department shall cease to be such only upon his death unless dismissed for cause after trial, or unless he resigns and thereby forfeits his right to participate in the pension fund.

Apart from the compelling force of the decision in *United States* v. *Tyler*, or if the question were entirely new, upon somewhat different reasoning the same conclusion would be reached. Since, under the O'Dea case, the right to participate in the pension fund enters into the contract of employment, and since increases of salary of police officers are made from time to time, and if a man faithfully performs his duty his contract is for the remainder of his life, it may well be assumed that a man entering the department contemplates the possible increase of the salary which, but for these beneficial provisions, would be small. Under the construction contended for by the defendants, if two men should have entered the department on the same day, and one of them should have been shot in making an arrest, and his injuries necessitated the amputation of one of his legs, and if, in the regular course of the proceedings of the pension commissioners, he had been retired the day before the increase of salary became effective, he would be entitled to a pension of fifty-one dollars a month. If the other man had been similarly injured at the same time with similar results, and action on his retirement were deferred until the bill for the increase of salary became effective, he would receive a pension of seventy dollars a month.

The article of the charter relating to the fire department also provides for retirement pensions. At the same election at which the charter amendment was adopted increasing the salaries of members of the police department there was a corresponding amendment adopted providing for the increase of the salaries of the members of the fire department. (Stats. 1919, p. 1391.) The charter amendment relating to the increased salaries of firemen contained the following clause: ''the purpose of this amendment being to increase the salary of each officer, member and employee herein mentioned for the period specified herein'' (the provisions being

for an increase of the sum of twenty dollars per month for a period of five years to those members of the department receiving an annual salary of $1,860 or less), "but not to increase the pensions mentioned in sections 3, 4, and 5 of chapter 7, article IX over and above the amounts provided before the adoption of this amendment." Under this provision, the legislative intent was clearly expressed not to increase the pensions provided prior to the amendment for members of the fire department. The amendment providing for the increase of salaries of the members of the police department, simply amended the original charter provisions—sections 1 and 6 of chapter 5 of article VIII—specifically fixing the salary attached to the various ranks in the police department. There was no limitation or exception in the amendment similar to that relating to the temporary increase of salary granted the members of the fire department.

If doubt remained in regard to the proper construction of the amendment, relating to the police department, it would be resolved in favor of the petitioner because of this difference in the two amendments submitted to the people and adopted at the same election. [3] It is firmly established that pension statutes are to be liberally construed. (O'Dea v. Cook, 176 Cal. 662, [169 Pac. 366]; Walton v. Cotton, 60 U. S. (19 How.) 355, [15 L. Ed. 658, see, also, Rose's U. S. Notes]; Hanscom v. Malden, 220 Mass. 1, [Ann. Cas. 1917A, 145, 107 N. E. 426].)

The evident purpose of the amendment was to make provision for the greatly increased cost of living. It is alleged in the petition that of the one hundred or more pensioners, who are situated similarly to the petitioner, most are old, disabled, and infirm and unfit for active service in the police department or elsewhere, and that others are widows and children, largely dependent upon their pensions. The increased cost of living peculiarly affects persons so situated, and the reasons which actuated the voters of San Francisco to increase the pensions of men on the active list of the police department apply quite as strongly to those members of the police department who are not on the active list.

The writ of mandate will issue as prayed.

Langdon, P. J., concurred.