Hat, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover the sum of $486.32, which he claims to be due him by virtue of the act of Congress approved May 22,1917, 40 Stat., 84.
The plaintiff enlisted as a ship’s writer in the United States Coast Guard on September 18, 1913, and on January 13, 1917, he was rated as a yeoman in the Coast Guard, and was serving as such' on April 6, 1917, when war with Germany was declared and on May 22,1917, when the act above cited was passed. On September 14, 1918, he reenlisted in the Coast Guard as yeoman, and was honorably discharged on May 29,1919.
The duties of yeoman in the Coast Guard corresponded in all respects to those of chief yeoman in the Navy.
By the act of January 28, 1915, 38 Stat., 800, it was provided that in time of war the Coast Guard should operate as a part of the Navy, subject to the orders of the Secretary of the Navy.
Shortly after the passage of the act of May 22, 1917, the commandant of the Coast Guard submitted to the Navy Department a tabular statement showing the several grades and ratings, of warrant officers.-petty officers, and enlisted men of the Coast Guard, and stated opposite thereto the grades or ratings in the Navy to which the Coast Guard grades or ratings corresponded. These tabular statements were arranged on the basis of the duties and responsibilities of the several ratings. In this statement a yeoman in the Coast Guard was put down as corresponding to a chief yeoman in the Navy.
In the Navy there are yeomen of the first, second, and third class, but no yeomen. There are no chief yeomen in the Coast Guard, but there are chief yeomen in the Navy, and, as pointed out above, the duties of chief yeomen in the Navy correspond in all respects to the duties of yeomen in the Coast Guard. On October 10,1917, the Secretary of the Navy issued *272 a general order which provided that a yeoman in the Coast Guard should correspond in rating with a yeoman, first class, in the Navy. The duties of a yeoman, first class, in the Navy do- not correspond with the duties of a yeoman in the Coast Guard, his duties and responsibilities being of lesser character than those of .yeoman in the Coast Guard. By virtue of the order of the Secretary of the Navy the plaintiff was paid as yeoman of the first class in the Navy, which pay was lower than the pay of a yeoman in the Coast Guard, but by another provision of the act of May 22, 1917, it was provided that nothing contained in the act shall operate to reduce the pay or allowances that would have been received by any person in the * * * Coast Guard except for the passage of the act (40 Stat., 87), and in that way the plaintiff continued to receive the pay of a yeoman in the Coast Guard, but by virtue of the order of the Secretary of the Navy the plaintiff was deprived of the benefit of the act of May 22, 1917, which he claims entitled him to receive the pay of chief yeoman in the Navy.
That part of the act of May 22, 1917, which relates to the pay of officers of the Coast Guard is as follows:
“ That during the continuance of the present war, warrant officers, petty officers, and enlisted men of the United States Coast Guard shall receive the same rates of pay as are or may hereafter be prescribed for corresponding grades or ratings and length of service in the Navy.”
The object of Congress in passing the above law was to fix the pay of warrant officers, petty officers, and enlisted men of the Coast Guard during the continuance of the war with Germany, and to fix it so that these officers and enlisted men should receive the same pay as was prescribed for corresponding grades and ratings in the Navy. The officers of the Coast Guard were to be placed on an equal footing with the officers of the Navy, and were to derive any benefit which might accrue to them by reason of the fact that they were discharging the same duties and were incurring the same responsibilities which naval officers of similar rank were discharging and incurring.
The question for determination is: Does the fact that a yeoman of the Coast Guard performs the same duties, incurs *273 the same responsibilities, and possesses the same qualifications in the Coast Guard Service which a chief yeoman in the Navy performs, incurs and possesses, entitle a yeoman in the Coast Guard to receive under the statute above quoted the same pay as a chief yeoman in the Navy?
In arriving at the proper rate of pay must the court base its decision upon the correspondence of names in the two services, or must it base its decision upon the correspondence of the duties and qualifications of the officers in the two services? It will be observed that there were no yeoman in the Navy and no chief yeoman in the Coast Guard, but the duties and qualifications of the two offices were identical. The question is not one of office, but is purely a question of pay.
This court and the Supreme Court of the United States have placed a construction upon the statutes dealing with questions of corresponding pay in the Army and Navy; and it has been held that not corresponding grades but that the corresponding duties performed and the corresponding qualifications possessed must be considered in deciding whether an officer was entitled to the pay claimed for performing similar duty in the Navy for which pay had been fixed in the Army. The act known as the Navy personnel act, 30 Stat., 1007, provided that after June 30, 1899, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army. There were in the Navy certain ranks or grades which did not correspond in name with ranks or grades in the Army, and the court in determining what was the pay to which the officer in the Navy was entitled arrived at a conclusion by ascertaining the duties which were performed by the officers in the respective services. This court said: “ It is not for the courts to add to or take from the act where the pay for a similar service rendered by a naval officer can be assimilated to that of an officer of corresponding rank in the Army.” Crosley v. United States, 38 C. Cls., 82, 86. See also United States v. Crosley, 196 U. S., 327; Richardson v. United States, 38 C. C., 182; Plummer v. United States, 224 U. S., *274 137; United States v. Farenholt, 206 U. S., 226; United States v. Miller, 208 U. S., 32, 36.
The statute (act of May 22,1917) was passed by Congress for the purpose of equalizing as far as possible the pay of officers of the Coast Guard with that of officers of the Navy. The act attempted to assimilate the pay, and the court in construing the act will, so far as conditions admit, put such a construction upon it as will carry out the intent of Congress. In the case at bar a Coast Guard officer renders similar service to that rendered by a naval officer, has the same duties to perform, and possesses the same qualifications ; the pay of the Coast Guard officer can be assimilated to the pay of the officer of the Navy, and therefore we think that the plaintiff is entitled to receive the pay prescribed for chief yeoman in the Navy.
The defendant, however, contends that by virtue of the act of January 28, 1915, 38 Stat., 800, which provides that in time of war the Coast Guard Service shall be a part of the Navy, subject to the orders of the Secretary of the Navy, the Secretary of the Navy had the right to prescribe the grades and ratings of the Coast Guard Service, and that such grades and ratings prescribed by the Secretary must be taken as final by the court, and that the pay thus fixed by the Secretary of the Navy can not be inquired into nor considered by the courts. Section 161, Revised Statutes, is relied upon by the defendant.
This court has repeatedly passed upon the effect of regulations of the executive departments. It has uniformly held that such regulations could only have the force and effect of law when they are not in contravention to existing law and when they are promulgated for the purpose of carrying into effect the law in respect to which they are promulgated.
The general purpose of the proviso under consideration was to establish uniformity in the pay of like officers in the Coast Guard and the Navy. It fixed the pay of those officers, and nowhere in the act of May 22, 1917, or in the act of January 28, 1915, is anything to be found which delegates to the Secretary of the Navy the right to fix the pay of these officers. By assuming to fix the pay of officers of the Coast Guard the Secretary undertakes to exercise legis *275 lative power by regulation, and in this case to defeat by his interpretation of the statute the purpose and intent of Congress, for the intent of Congress was to benefit the officers of the Coast Guard by giving them the pay of like officers in the Navy. This the regulation of the Secretary prevented. Glavey v. United States, 182 U. S., 595, 605; United States v. Symonds, 120 U. S. 46, 49; Illinois Central Railroad Co. v. United States, 52 C. Cls., 53, 57.
As to the time when the proviso fixing the pay of officers, etc., of the Coast Guard takes effect we are of opinion that it takes effect from the beginning of the war, April 6, 1917. The intent of Congress was to give these officers of the Coast Guard during the war the same pay as like officers in the Navy, and in order to carry out this purpose these officers must be paid from the beginning of the war.
For the foregoing reasons we are of opinion that the plaintiff is entitled to recover the sum of $486.32. It is so ordered.
DowNet, Judge, and Booth, Judge, concur.
Campbell, Chief Justice, took no part in the decision of this case.