## UNITED STATES *v.* NOCE.

APPEAL FROM THE COURT OF CLAIMS.

No. 360.   Argued April 30, 1925.—Decided June 8, 1925.

1. An army officer *held* not entitled to count for longevity pay his service as a cadet in the Military Academy. P. 616.
2. The proviso in § 11 of the Act of May 18, 1920, 41 Stat. 601, " that hereafter longevity pay for officers in the Army, Navy, Marine Corps, Coast Guard, Public Health Service and Coast and Geodetic Survey shall be based on the total of all service in any or all of said services," does not deal with rules of longevity in any one service but intends to produce equality as between all the services named and did not repeal the provisions in the Army and Naval Appropriation Acts, of October 24, 1912, and March 4, 1913, respectively, directing that service in the Military and Naval Academies shall not be counted in computing for any purpose the length of service of any officer of the Army, Navy or Marine Corps.

58. Ct. Cls. 688, reversed.

APPEAL from a judgment of the Court of Claims allowing recovery of longevity pay by an army officer.

*Mr. Assistant Attorney General Letts,* with whom the *Solicitor General* and *Mr. Merrill E. Otis,* Special Assistant to the Attorney General, were on the brief, for appellant.

*Mr. Samuel T. Ansell,* with whom *Mr. Edward S. Bailey* was on the brief, for appellee.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

Daniel Noce was Major of Engineers in the United States Army in the emergency establishment from May 18, 1920, until June 30, 1920, when he returned to a captaincy in the regular establishment. He sued the United States in the Court of Claims for $467.66 as longevity pay, alleged to be due him under the law over and above the pay he received. He was appointed cadet at the West Point Military Academy August 1, 1913. He was graduated April 20, 1917. If he can count for longevity pay his cadet service from August 1, 1913, to April 20, 1917, he will be entitled to the amount he claims from the date of approval of the Act of Congress of May 18, 1920, (§ 11, c. 190, 41 Stat. 601, 603) to April 19, 1922, the period covered by this suit. The accounting officers denied the claim.

The Court of Claims found that under the Act, claimant's cadet service must be counted and gave judgment for him. The United States has appealed and urges a reversal, on the ground that such a conclusion is forbidden by the Army Appropriation Act of October 24, 1912, c. 391, § 6, 37 Stat. 569, 594, which provides:

" That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy, or to the Naval Academy, shall not be counted in computing for any purpose the length of service of any officer of the Army."

A similar provision was made in the Naval Appropriation Act of March 4, 1913, c. 148, 37 Stat. 891, as follows:

" Hereafter the service of a midshipman at the United States Naval Academy, or that of a cadet at the United States Military Academy, who may hereafter be ap-

pointed to the United States Naval Academy, or to the United States Military Academy, shall not be counted in computing for any purpose the length of service of any officer in the Navy or in the Marine Corps."

The Court of Claims held that these two provisions had been repealed by the Act of May 18, 1920, already referred to. The Act is entitled " To increase the efficiency of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey and Public Health Service". It increased the pay of certain commissioned officers of the Army, Navy, Marine Corps and Public Health Service, mentioning in detail the ranks affected and the increases provided. It provided for a temporary commutation of quarters, heat, and light theretofore granted to Army officers on duty in the field to those of the Navy, Marine Corps, Coast Guard and Public Health Service. It gave warrant officers of the Navy an increase, in addition to all pay allowances, of $240 per annum. It increased the pay of all enlisted men of the Army and Marine Corps and of female nurses 20 per centum with certain exceptions. It increased the commutation rations of non-commissioned officers of the Army, of the Marine Corps and of field clerks of the Army and the Quartermaster Corps. It gave a new base pay for enlisted ratings of petty officers and non-commissioned officers and of enlisted men in the Navy, of the Naval Academy band and of the Fleet Naval Reserve. It authorized the Secretary of the Navy in his discretion to readjust the prevailing rates of pay of civilian professors and instructors of the Naval Academy. In § 8 it provided that the Coast Guard should have the same pay ratings to correspond with the Navy and mentioned the officers. Then by § 11 it provided as follows:

"Sec. 11. That in lieu of compensation now prescribed by law, commissioned officers of the Coast and Geodetic Survey shall receive the same pay and allowances as now

are or hereafter may be prescribed for officers of the Navy with whom they hold relative rank as prescribed in the Act of May 22, 1917, entitled 'An Act to temporarily increase the commissioned and warrant and enlisted strength of the Navy and Marine Corps, and for other purposes,' including longevity; and all laws relating to the retirement of commissioned officers of the Navy shall hereafter apply to commissioned officers of the Coast and Geodetic Survey: *Provided, That hereafter longevity pay for officers in the Army, Navy, Marine Corps, Coast Guard, Public Health Service, and Coast and Geodetic Survey shall be based on the total of all service in any or all of said services.*"

It is this proviso which it is said repealed the laws of 1912 and 1913 above quoted. It is urged that the words " longevity pay shall be based on the total of all service in any or all of said services " are inconsistent with the exclusion of service in the Military Academy or in the Naval Academy from the calculation of longevity pay.

We are unable to put such a construction on this proviso. The whole Act was intended to promote equality between the six services. After equalizing their pay, it was intended to give any officer or any man in either of the services the benefit of longevity increases for any service which he might have had in any other of the services. The Report of the Managers of the House of Representatives as to § 11 and its proviso (H. R. 948, 66th Congress, 2nd Sess.) said:

" It provides that commissioned officers of the Coast and Geodetic Survey, a highly technical and specialized service, shall receive the same pay and allowances as are prescribed for officers of the Navy with whom they hold relative rank as prescribed in the Act of May 22, 1917. *It also contains a proviso placing all services on an equality in the matter of computation of longevity or service pay.*"

. In other words, the longevity pay of a member of any service was to be determined by his total service in any or all of the services. It was not dealing with the rules as to the longevity in any one service. It was to make the calculation of longevity as if the six services were but one service. It was not aiming at any inequality within a service but at an inequality between services. No reference is made to cadet service and nothing to indicate that Congress had it in mind.

The question whether service in either of the Academies was Army or Navy service which should . count for longevity pay and retirement was a long standing issue between the officers of the Army and Navy who were graduates of the two academies on the one hand and the officers who were not graduates and the accounting officers of the Treasury on the other. This is evident from the decision of this Court in *United States* v. *Morton,* 112 U. S. 1; and *United States* v. *Watson,* 130 U. S. 80. The legislative history of the Act of 1912 and that of 1913 shows that the question was much contested between the two Houses. The Report of the House Committee on Military Affairs (H. R. 270, 62nd Congress, 2nd Sess.) gives an extended argument against the practice of computing cadet service for pay and retirement purposes. It said:

" The result of this practice is that a graduate of the Military Academy who was appointed a second lieutenant, after having been educated for that appointment for four or more years wholly at the expense of the Government, receives his first 10 per cent increase of pay after not more than one year of service as a commissioned officer, whereas the second lieutenant who is appointed from civil life, after having been fitted for the appointment wholly at his own expense, must serve for five full years as a commissioned officer before he can receive his first 10 per cent increase of pay. And the same disparity between the two cases continues to the end."

After pointing out other discriminations arising from this practice, the report continues:

" It is but just to say that this preposterous practice did not originate with the War Department. It was the result of a decision rendered by the Supreme Court October 27, 1884 (Morton *v.* United States, 112 U. S. 1), to the effect that the time during which a person has served as a cadet is to be regarded as ' actual time of service in the army.' " . . .

After referring specifically to retirement, the report says:

" These are additional discriminations against the civilian appointee who pays for his own preliminary education and in favor of the graduate of the Military Academy who is educated for his commission at the expense of the Government."

In view of this long continued controversy which before 1912 had finally been settled only by two decisions of this Court, it is inconceivable that the two Acts of 1912 and 1913, nullifying the effect of those decisions, and passed after a heated struggle, should have been repealed without mention of the cadet service in the proviso now said to have worked this result. As already pointed out, the Act of which this was a part was detailed in its reference to the commissioned officers, the non-commissioned officers and to the enlisted men of the various six services affected, and to the pay and increases which they were to receive. Had it been intended to increase the " fogey " pay, as the longevity pay is called, for only a part of the commissioned officers of the Army and only a part of the commissioned officers of the Navy, and only a part of the commissioned officers of the Marine Corps in such a specific Act, the favor thus to be conferred upon them would certainly have been set forth in language whose meaning could not be mistaken.

It is, indeed, very difficult to say that there is any real inconsistency between the proviso of 1920 and the Acts of

1912 and 1913. It is supposed to be shown in the use of the words " any or all the services " and it is said that as " any " may mean one or more, it may apply to the Army alone, and can only be satisfied by making it apply to the total service in the Army alone and must therefore mean service in the Army as construed by this Court in the *Morton Case* and the *Watson Case,* in which it was held that, under then existing legislation, service in the Military Academy was service in the Army. This, it seems to us, is a strained method of first finding an inconsistency, by no means clear, if it exists at all, and then erecting it into an implied repeal. Implied repeals are not favored. *United States* v. *Greathouse,* 166 U. S. 601, 605; *Frost* v. *Wenie,* 157 U. S. 46, 58; *United States* v. *Yuginovich,* 256 U. S. 450, 463.

*Judgment reversed.*