## HEIDT v. UNITED STATES.
### No. 6265.

Circuit Court of Appeals, Fifth Circuit.
Feb. 22, 1932.

HUTCHESON, Circuit Judge, dissenting.

Max H. Wier and Raymond D. Wier, both of San Antonio, Tex., for appellant.

John D. Hartman, U. S. Atty., of San Antonio, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The United States recovered judgment against Grayson V. Heidt for overpayments made to him as an active officer of the army between July 1, 1922, and January 1, 1929, and he appeals.

The case was tried by the court without a jury on an agreed statement of facts in brief as follows: Heidt became a commissioned officer February 15, 1899; was retired to the inactive list September 21, 1908, because of disabilities incurred in the line of duty, but not due to wounds received in action. After five years, ten months, and twenty-six days of retirement he was put on active duty August 18, 1914, and so continued until September 17, 1917, when he was put again on the active list of the Army under the provisions of the Act of March 4, 1915. After the latter date he computed the period of five years, ten months, and twenty-six days of inactivity as part of his service in claiming longevity pay, and was paid accordingly until January 1, 1929. On that date he was first notified by the army finance officer that the inclusion of the inactive period was considered improper. The full facts about Heidt's service were at all times obtainable from the records of the War Department. Recovery was sought and had only for the period since July 1, 1922, when the Act of June 10, 1922, took effect (42 Stat. 625).

One contention is that by long continuance of the payments with knowledge of the facts the United States is estopped to recover. A voluntary payment made by an individual under no mistake of fact is ordinarily not recoverable, because he may do what he wills with his own money. But the rule is quite otherwise in payments of public money made by public officers. Norfolk County v. Cook, 211 Mass. 390, 97 N. E. 778, Ann. Cas. 1913B, 650 and note. They have no right of disposal of the money, but must act according to law, the law operating as a limitation on their authority to pay. The party receiving an illegal payment is bound to know the law, and ex equo et bono is liable to refund it. Wisconsin Central R. Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399; United States v. Burchard, 125 U. S. 176, 8 S. Ct. 832, 31 L. Ed. 662. The long continuance of overpayments illegally made does not prevent their recovery, even when contractual relations are involved. Grand Trunk Western Ry. Co. v. U. S., 252 U. S. 112, 40 S. Ct.

309, 64 L. Ed. 484. Much less where, as here, no contract has been made on the faith of them, for a soldier's services and pay are regulated wholly by law. While there is hardship in recalling money which has probably been spent, there is no basis for an estoppel because of a change of condition on the faith of the conduct or representations of another. In Walker v. United States (C. C.) 139 F. 409, affirmed (C. C. A.) 148 F. 1022, where estoppel was applied, the person accounting with the government did not retain or spend as his the involved money, but paid it over to others from whom he could not recover it. Here Heidt received the overpayments as his own money, and either has them or has used them for his own benefit. He can claim no estoppel against a demand for their repayment.

We think the court correctly found that the sums claimed were illegal overpayments. Heidt's pay as an active officer during the time in question was fixed by the provisions of the Act of June 10, 1922. The parts of section 1 (37 USCA §§ 3, 4), here material are: "Every officer paid under the provisions of this section shall receive an increase of 5 per centum of the base pay of his period for each three years of service up to thirty years. * * * For officers appointed on and after July 1, 1922, no service shall be counted for purposes of pay except active commissioned service under a Federal appointment, and commissioned service in the National Guard when called out by order of the President. For officers in the service on June 30, 1922, there shall be included in the computation all service which was then counted in computing longevity pay. * * *" Retired pay is separately dealt with in section 17. Heidt, being an active officer in service on June 30, 1922, was entitled to count all service then counted in computing pay. Section 16 (37 USCA § 25) also provides: "That nothing in this Act shall operate to reduce the pay of any officer on the active list below the pay to which he is entitled by reason of his grade and length of service on June 30, 1922." We do not understand that these provisions ratify or enact into law any errors or overpayments made to Heidt prior to June 30, 1922, but the meaning is that he shall continue to have the same longevity pay that he was theretofore entitled by law to receive. We are therefore carried back into the history of longevity pay, and the effect upon it of retirement from active service. Section 1262 of the Revised Statutes provided for an in-

crease in pay of "ten percentum of their current yearly pay for each term of five years service." In United States v. Tyler, 105 U. S. 244, 26 L. Ed. 985, decided in 1881, it was held that an officer on the retired list was still in service and was entitled to the increase which was to be compounded from term to term. By the Act of June 30, 1882, 22 Stat. 118, Congress overcame the decision as to compounding. Plummer v. United States, 224 U. S. 137, 32 S. Ct. 467, 56 L. Ed. 697. In the same act it was provided: "And the actual time of service in the Army or Navy, or both, shall be allowed all officers in computing their pay." Whether "actual time of service" was intended to exclude service on the retired list we need not consider, because on March 2, 1903, 32 Stat. 932, it was expressly enacted: "That hereafter, except in case of officers retired on account of wounds received in battle, no officer now on the retired list shall be allowed or paid any further increase of longevity pay, and officers hereafter retired, except as herein provided, shall not be allowed or paid any further increase of longevity pay above that which had accrued at date of their retirement." Heidt was retired under this act, and, so long as he remained on the retired list, was clearly entitled to no further increase. The act of March 4, 1915, 38 Stat. 1068, authorized the President with the consent of the Senate to transfer to the active list certain officers, "provided, That such officer shall be transferred to the place on the active list which he would have had if he had not been retired, and shall be carried as an additional number in the grade to which he may be transferred or at any time thereafter promoted." It was under this act that Heidt was returned to the active list in 1917. He contends, by virtue of its requirement, that he be given "the place on the active list which he would have had if he had not been retired," that he is entitled, not only to the grade and rank, but also to the longevity pay, which he would have had if he had always been on the active list. It is true these provisions occur in an appropriation act, but that means nothing in congressional legislation. The context, we think, shows that by "place" Congress meant only grade and rank, with such increase of pay as directly resulted therefrom. The effect of the act of 1903 was to exclude the time spent in retirement from calculation as service for purposes of longevity pay, and there is nothing in the language of the act of 1915 sufficient to overturn that policy. The act of May 12, 1917, 40 Stat. 48 (10 USCA § 974), did allow to be computed active service while on the retired list, and Heidt has been allowed this.

In the Act of June 4, 1920, § 51 (adding § 127a to Act June 3, 1916) 41 Stat. 785, active duty, whether in the regular, provisional, or temporary forces, is to be credited the same as under a regular army commission. In 10 USCA § 683, the words in the Act of June 10, 1922, "Service which is now counted in computing longevity pay" were substituted by those from the Act of June 4, 1920, so as to read: "For officers in the service on June 30, 1922, there shall be included in the computation all active duty performed while under appointment or enlistment from the United States Government, whether in the regular, provisional or temporary forces," etc. The wording has been altered in subsequent Supplements and sections 683a, 684 and 686 added, the last embodying the act of March 2, 1903. No particular light seems to come from the codification, especially in view of the provision that neither Code nor Supplements are to work any amendment of statutes. It was held, however, in United States v. Noce, 268 U. S. 613, 45 S. Ct. 610, 69 L. Ed. 1116, that the later pay acts did not operate to annul the congressional reversal of judicial ideas as to what is service for purposes of longevity pay in connection with cadets in the Military and Naval Academies. Equally they would not annul the similar reversal accomplished by the act of March 2, 1903, in connection with officers on the retired list. The view that that act stands unaltered seems to have prevailed in Leonard v. United States, 279 U. S. 40, 49 S. Ct. 232, 73 L. Ed. 604, which, however, concerned an officer placed on the retired list because of wounds received in battle, and consequently not within the deprivation of that act. We are of opinion that since the act of 1903 it is the mind of Congress that only active service shall be counted in claiming increase of pay for length of service except in the case of officers retired because of wounds received in battle. It follows that Heidt's inclusion of the period of his inactivity in the computation was erroneous, and the judgment for restoration of the excess paid him on that account was correct.

Judgment affirmed.

HUTCHESON, Circuit Judge (dissenting).

The majority and I are fundamentally in agreement on the proposition that "the labor-

er is worthy of his hire," that, when the hire has been fixed by statute, the employee can have no more, the employer can pay no less, and that neither the acceptance of less nor the payment of more will work an estoppel upon either. Emmons v. U. S., 63 Ct. Cl. 125, collecting the authorities.

We disagree on the hire. Our disagreement springs from the different methods employed by us in arriving at what Congress intended he should be paid. The majority opinion attaches great importance to the Act of March 2, 1903, governing longevity pay of officers on the retired list. I think it entirely inapplicable. The majority finds in its provisions a revelation of what was in "the mind of Congress" when it passed the Act of March 4, 1915, under which appellant was restored to the active list, authorizing the President, with the consent of the Senate, to make transfers to the active list, and therein provided: "Such officer shall be transferred to the place on the active list which he would have had if he had not been retired, and shall be carried as an additional number in the grade to which he has been transferred, or at any time thereafter may be promoted." I think the act of 1915 speaks for itself.

Aside from the difficulties I experience in finding in a statute passed twelve years earlier, in times of peace, and concerned entirely with retired officers, any reflection of "the mind of Congress" as to what the pay of active officers should be when, the world at war, it made provision in 1915 for nunc pro tunc restoration of officers to the active list, especially as Congress has uniformly since 1903 made separate provision for the pay of retired, from that of active officers (see Leonard v. U. S., 279 U. S. 40, 49 S. Ct. 232, 73 L. Ed. 604) I find the act of 1915 free from ambiguity, carrying "the mind of the Congress" on the face of it, and requiring for its ascertainment no judicial clairvoyance. In the simplest and most understandable terms Congress has declared that the transfer of appellant was "to the place on the active list which he would have had if he had not been retired."

In view not only of the settled dictionary meaning which the word "place" has, "order of priority, advancement," etc., but of its universal use in common speech as meaning position in service, from the standpoint of seniority, preferment, and pay, it would, it seems to me take weasel words of great power to leech it down to a mere pale repetition of the word "grade." I find no weasel words in the proviso. I think it needs no exegesis to discover that, when Congress said that an officer restored to active duty shall be transferred to the place on the active list which he would have had if he had not been retired, it meant that he would be so restored, no more and no less, and that the effect of the transfer was to reinstate him on the active list, nunc pro tunc the date of his retirement, completely and to all intents and purposes, as though he had always been there. Such effect for the act I think its words, apart from all other considerations, demand. When it is further considered that the act of 1915 was passed and acted upon as part of the plan for the national defense, and that, when the officer was restored to the active list, a real war was impending, to pare down the meaning of so full a word as "place" by qualifying out of it its effect on longevity pay is to take but a niggard view of the "mind of Congress" toward officers then called back to active duty.

While I am satisfied enough that the intent of the act of 1915 is plain, to rest upon its words alone, if "the mind of Congress" is to be sought elsewhere, there are other acts dealing with the longevity pay of active officers in the army, which, bearing directly upon the question at issue, tend, I think, to reinforce appellant's right to his pay.

It must be kept in mind in this case that this is not an action by the officer for back pay withheld. This is an action by the government to compel him to pay back, for five years, money which the accounting officers have been for the past ten years paying him. In such a case, though he may not hold what is not his due, the government is none the less the actor, and must, in order to have it back, point to a law which makes its original payment wrongful.

No statute to which reference has been made in the briefs and in the majority opinion as supporting the claims of the government is in my opinion at all applicable to the case of an active officer like appellant. The acts fixing the pay of active officers do not, in my opinion, support, they rebut the government's claim. That of June 10, 1922, revising generally the scheme of service pay, base, and longevity, fixed a new schedule; the amount of base pay fixed with reference to specific pay periods was made to depend both upon rank and length of service. Leonard v. U. S., 279 U. S. 42, 49 S. Ct. 232, 73 L. Ed. 604. It made no classi-

fication of active officers in active service into those who had been for a time on the retired list, and those who had never been. All without distinction were classified in periods according to rank and length of service. As to all active officers in the service on June 30, 1922, it provided: "There shall be included in the computation all service which is now counted in computing longevity pay." Appellant at that time was drawing, and had for five years drawn, longevity pay on the basis established by the statute of 1915, that he had never been out of active service. The government has pointed to no statute or practice condemning this computation, or the payment made under it. On the contrary, it has affirmed its correctness by not suing to recover it back. When further, still searching for the mind of Congress, it is found that on May 29, 1928, the Congress of the United States, amending and correcting errors in the Code, including erroneous section 683, set out correctly in the majority opinion as it appears in the Code, but none the less an incorrect rendering of the statute, made section 683 (10 USCA) read: "For officers in the service on June 30, 1922, there shall be included in the computation all service in the army including active duty performed," etc., the conclusion in appellant's favor becomes more inescapable. Notwithstanding the act of 1903, the holding of United States v. Tyler, 105 U. S. 244, 26 L. Ed. 985, that "retired officers are in the military service of the Government," is still the law. White v. Treibly, 57 App. D. C. 238, 19 F.(2d) 712; Kahn v. Anderson, 255 U. S. 6, 41 S. Ct. 224, 65 L. Ed. 469; Sawyer v. United States (C. C. A.) 10 F.(2d) 416; Aitken v. Roche, 48 Cal. App. 753, 192 P. 464. In this view, the language "all service in the army" carries the conviction that it was the mind of Congress as to all active officers in the service in June, 1922, that they should have their pay computed on their army service without deduction for the periods during which they had been retired. Whether so or not as to all officers, it is, I think, certainly so as to officers restored by the act of 1915, as appellant was, to "the place on the active list which he would have had if he had not been retired," for the act, as to them, has wiped out the period of retirement.

"The laborer is worthy of his hire." The officer, appellant here, has had but that. It ought not to be taken from him.

I respectfully dissent.