FIRST NATIONAL BANK OF BOYNE CITY *v.* A. HELLER SAWDUST CO.

1. CORPORATIONS—STOCKHOLDER WHO SOLD STOCK TO CORPORATION LIABLE TO CREDITOR FOR MONEY SO PAID HIM.
    Under the general corporation act (section 1, chap. 3, pt. 2, Act No. 84, Pub. Acts 1921), a stockholder who sold his stock to the corporation at a time when it had no surplus with which to pay for same is liable to a creditor of the corporation up to the amount of money so paid to him, and the solvency of the corporation at the time he sold his stock to it is neither controlling nor material.

2. SAME—PURPOSE OF STATUTE TO PROTECT CREDITORS.
    The purpose of said statute is to prevent depletion of the corporate resources by the withdrawal of any part of its

---

[1]Corporations, 14 C. J. § 1589; [2]Id., 14a C. J. § 2126.

capital stock, thus injuring the rights of existing creditors by lessening the value of their claims and the probability of being able to enforce them.

3. SAME—LIABILITY OF STOCKHOLDER NOT DEFEATED BY KNOWLEDGE OF CREDITOR OF SALE OF STOCK.

In an action under said statute against a stockholder on a note given by the corporation, part of the proceeds of which were used by it to purchase its own stock from defendant, operation of the statute is not defeated because he was not a party to the loan and had no notice of renewals of the note, nor is it material that plaintiff had notice of the purpose of the loan.

4. SAME—BILLS AND NOTES—LIABILITY OF STOCKHOLDER IS UNDER STATUTE AND NOT AS INDORSER.

That defendant stockholder was not an indorser of the note sued on is of no consequence, since his liability is under the statute, and not as indorser.

5. SAME—NOT NECESSARY TO FIRST EXHAUST LIABILITY OF CORPORATION.

Under said statute, it is not necessary for a creditor to first exhaust the liability of the corporation and collect from it as far as possible, as is the requirement in the collection of labor claims, but proceedings may be had directly and primarily against the stockholders.

6. SAME—UNPAID SUBSCRIPTIONS—CREDITOR WITH NOTICE MAY NOT RECOVER FROM STOCKHOLDERS ON UNPAID SUBSCRIPTIONS.

Where a bank, in making a loan to a corporation and taking its note therefor, did not rely upon the fact of stock subscriptions or their being paid, but in fact knew that they had not been paid, it is not entitled, in an action on the note, to recover from the stockholders upon their unpaid stock subscriptions.

7. SAME—BILLS AND NOTES—CREDITOR OF CORPORATION BY GIVING UP NOTES AFTER WITHDRAWAL OF STOCKHOLDER RELEASES HIM.

A creditor of a corporation, who gives up old notes and takes new ones after a stockholder has withdrawn from the corporation by making a sale of his stock and giving notice thereof as required by law, thereby releases such stockholder from the debt.

---

[3]Corporations, 14 C. J. § 1589; [4]Id., 14 C. J. § 1589; [5]Id., 14 C. J. § 1634; [6]Id., 14 C. J. § 1546; [7]Id., 14 C. J. § 1623.

Error to Charlevoix; Gilbert (Parm C.), J.    Submitted June 10, 1927.    (Docket No. 75.)    Decided December 1, 1927.

Assumpsit by the First National Bank of Boyne City against the A. Heller Sawdust Company, Frank O. Barden, Sr., and others on promissory notes.    Judgment for plaintiff.    Plaintiff and defendant Barden bring error.    Reversed and remanded with instructions.

*J. M. Harris,* for plaintiff.

*E. A. Ruegsegger* (*Clink & Williams,* of counsel), for defendant Barden.

SNOW, J.    The defendant A. Heller Sawdust Company was organized as a Michigan corporation under the general corporation law of 1921, for the manufacture, purchase, and sale of wood products at Boyne City.    Its authorized capital stock was $10,000, which, according to the articles of association, was all subscribed, and $1,000 paid in in cash.    The three stockholders were the defendants, Alex. Heller, Charles T. Sherman, and F. O. Barden, Sr., who each subscribed for one-third of the stock.

In August, 1924, Mr. Barden desired to retire from the company and sell his stock.    The company agreed to buy it for $5,000, although it had no corporate surplus and no money with which to make the purchase. Therefore all the interested parties went to the banking office of plaintiff to arrange for a loan.    The company already owed the bank $1,000, evidenced by its note, upon which all the stockholders were indorsers. They succeeded in negotiating a further loan of $4,000, and Mr. Smith, the bank's cashier, knew the money was being obtained to pay Mr. Barden for his stock, and that he was about to retire.    Therefore he was not

required to indorse the note along with the others, and, with the consent of the bank, erased his name from the $1,000 note, so that he is not liable as principal or indorser on either of these notes. From the $4,000 loan Barden was paid $3,000 on the purchase price for his stock, and the remainder of the loan was used to take care of an indebtedness at another bank.

This action is to recover on the two notes referred to, plaintiff claiming liability of Barden in part by virtue of section 1, chapter 3, part 2, of the general corporation act (Act No. 84, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 9053 (69)]), which reads as follows:

"If the capital stock of any corporation shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be jointly and severally liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to him or them respectively."

It is plaintiff's contention that this sale by Barden direct to the corporation was in effect a withdrawal of part of its capital stock and a refunding to him as such stockholder before the payment of all the debts of the corporation, rendering him, under the statute quoted, liable to the amount of the sum so refunded.

Counsel for defendant Barden in their brief give the following reasons for the nonapplication of the statute in the instant case and for directed verdict in his favor:

"(a) That there was no evidence showing that defendant Barden was a party to the loan or note of $4,000.

"(b) That the plaintiff released defendant Barden from his liability on the $1,000 note.

"(c) That he had no notice or knowledge of the renewals of either of the notes.

"(d) That the plaintiff had not exhausted its remedy

against the defendants, A. Heller Sawdust Company, Alex. Heller, and Charles T. Sherman.

"(e) That a stockholder's liability is secondary."

Both plaintiff and defendant Barden moved for a directed verdict, but the trial court reserved decision under the Empson act, and submitted the case to the jury under instructions which permitted them to find a verdict against the defendant Barden in the sum of $2,000, and interest, and against the remaining defendants in the sum of $5,000, and interest. Such instructions in part were:

"Now, in reference to that, I will charge you at this time that Mr. Barden cannot be liable for more than $2,000 and the interest thereon. I do not think that has been computed, but the court will reserve the right to compute that later on, or to have the clerk compute it, if the jury find it. The reason I charge you that, is this: The sawdust company had no legal right or authority to borrow money with which to pay Mr. Barden for his stock; and neither had it any authority to purchase the stock from Mr. Barden at the time the arrangement was made with him, because it had no funds under the law which it had any right to put to that purpose. It was organized to deal in certain wood products. That meant to buy, to sell and handle them, but the company was not organized for the purpose of buying in its own stock; and under the corporation law, a corporation cannot use its money or pledge its credit to buy its own stock, unless it has a certain surplus fund, or sufficient funds realized from it, so that it can be done without impairing the corporation. That could not be done here, under these facts. * * *

"Now, there is another thing: the obligation of Mr. Barden in this case, if it is to be recorded against him at all, or adjudged against him here, is due to the fact of his having been a stockholder in this Heller Sawdust Company. He is not liable upon the original note, which had been made and signed by him for $1,000, in and of itself, because by the transaction of the parties, they allowed his name to be erased and marked off that note, as you will recall by the testi-

mony, but he may be liable for $1,000 representing that same debt, because of his being a stockholder in this corporation, and having attempted to turn his stock back while the corporation owed debts. According to law, if a man is a stockholder of a corporation, he cannot take money from the corporation for his stock, when there is not sufficient funds and money and property to pay the debts of the corporation, honestly owing to other people, and that is what has been attempted to be done here; not with any fraudulent desire—I should say that—I do not think that was the situation, and I do not think the testimony indicates it; nevertheless, it was an illegal act, and cannot stand under the law, to that extent.

"So you will understand, on that first note of $1,000, Mr. Barden's signature was erased, and that note is a direct obligation of that company as maker. That note, however, represented the debt of the Heller Sawdust Company; the Heller Sawdust Company had borrowed that money from the bank, and now the bank comes in and says that $1,000 has never been paid; the Heller Sawdust Company is liable for it; Mr. Sherman is liable for it; Mr. Heller is liable for it; and if Mr. Barden took part in the transaction, as claimed by the plaintiff, then he is liable to the extent of $1,000 in that note, and for $1,000 in each subsequent note.

"So that raises a question for you to find, whether or not Mr. Barden did know when the arrangement was made that he should get this money, did he know that that money was to come from and be paid by the Heller Sawdust Company, I mean, when he turned in the stock, his stock? If he did, then he should be liable in this case. * * * Now that is a question for you to decide and determine, whether he knew it or not. If you find that he did, he is liable for at least $1,000 of the $4,000 note."

The motions for directed verdicts were later denied, judgment was entered on the verdict, and both the plaintiff and defendant Barden have assigned error.

The statute, *supra,* under the provisions of which plaintiff claims right to recover at least $3,000 (the sum concededly paid him by the corporation on the purchase of stock) is without ambiguity, and its con-

struction is not difficult. Giving it interpretation, it simply means that an existing creditor of a corporation may recover his debt from a stockholder to the amount of any sum that has been refunded to him by the corporation for his corporate stock. The solvency of the corporation at the time is neither controlling nor material. This right of action against the stockholder who has taken money from the corporation for his stock is given to any one who was a creditor when the money was paid, and the stockholder is liable to the extent of the money so taken. The statute does not make the transaction illegal or void, but in effect creates in the hands of the stockholder a trust fund for the benefit of then existing creditors of the corporation to be turned over to them on proof of their demand. The purpose of the statute, readily apparent, is to prevent depletion of the corporate resources by the withdrawal of any part of its capital stock, thus injuring the rights of existing creditors by lessening the value of their claims and the probability of being able to enforce them.

Adverting to the reasons offered by counsel for defendant Barden for the nonapplication of the statute in the present case. Its operation is not defeated because Barden was not a party to the loan, nor because he had no notice of renewals of the notes. Neither did the bank forfeit any of its rights under the statute because it had knowledge that the corporation was about to purchase Barden's stock, or even that it was to pay for it in part from the loan. It is not illegal for a corporation to retire its stock if it has sufficient surplus to do so and no creditors to be adversely affected thereby, and it is not claimed plaintiff had any knowledge whatever on this subject. It is true Barden was not an indorser on the $4,000 note or its renewal, and had been released on the other, but plaintiff does not claim its right to recover against him as an indorser, and this fact therefore is of no

consequence. He is liable, if at all, only by virtue of the statute.

The last reason urged by defendant why plaintiff is not entitled to the benefit of the statute is that in any event his liability is but secondary, and that he cannot be held until plaintiff has exhausted its remedy against the corporation and the other stockholders, Heller and Sherman, who were indorsers. In support of this contention counsel cite a number of cases holding this to be the rule in the case of labor debts. It is. See recent case of *Wegner* v. *Tower*, 235 Mich. 610, and cases there cited. Rights of action on claims for labor, in accord with the State Constitution (art. 12, § 4), are afforded by the statute, section 9, chapter 3, part 2, Act No. 84, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [77]). This section expressly provides for individual liability for labor "at any time after an execution shall be returned unsatisfied, in whole or in part, against the corporation." There is no such provision in the statute under consideration, and we can see no good reason for holding the liability of a stockholder thereunder other than a primary one. Under this statute it is not therefore necessary for a creditor to first exhaust the liability of the corporation and collect from it as far as possible, as he is required to do in the case of labor claims. Proceedings may be had directly and primarily against the stockholders. Under the undisputed evidence, that portion of plaintiff's motion to direct a verdict against defendant Barden for $3,000, "based upon the withdrawal of the funds from the company through the sale of stock, there being no surplus in the company," should have been granted.

Plaintiff also requested directed verdict against defendant Barden and the other stockholders, jointly, for the balance of its claim, upon their capital stock subscriptions which had not been paid in full. To this request it was not entitled. Plaintiff's cashier,

Mr. Smith, who represented the bank when the loans were made, testified that he knew then that Heller, Sherman, and Barden had each subscribed for one-third of the $10,000 capital stock of the corporation, but did not know whether it was paid in or not; that he had never inquired about it, but was of the opinion that it was not; that he was in close touch with the business of the corporation as well as the personal business of the stockholders. Mr. Smith also testified, in substance, that his bank extended credit to the corporation because it knew and trusted its stockholders, with each of whom it had done business for a long time; that he had confidence in them and relied upon their honesty and ability to pay the debts of the company. It is clear that the loans to the corporation were not made because of belief in or reliance upon the fact of stock subscriptions or their having been paid. Then, too, the bank renewed the notes after Barden had sold his stock, with which transaction it was thoroughly familiar, and it has been held in such an event in *New England Commercial Bank* v. *Newport Steam Factory*, 6 R. I. 154 (75 Am. Dec. 688), that a creditor of a corporation, who gives up old notes and takes new ones, after a stockholder has withdrawn from the corporation by making a sale of his stock and giving notice thereof as required by law, thereby releases such stockholder from the debt. See, also, 7 R. C. L. p. 406.

But it is sufficient to say that the plaintiff, in extending credit to the corporation and its two stockholders, Heller and Sherman, in no way relied upon the fact that all the stock had been subscribed for or paid. It knew, in fact, the stock had not been paid, but the matter was in no way considered in making the loan. It was made because the bank had confidence in the borrower and its indorsers. It voluntarily released Barden as indorser. It did not then consider Barden liable by reason of nonpayment of

his stock subscription nor intended to hold him because of it. It cannot hold him now. By virtue of the statute, *supra*, plaintiff is entitled to a judgment against defendant Barden for $3,000, the sum he withdrew from the corporate assets, and which, in effect, he is bound to return. It is not entitled to recover anything additional from him.

Judgment is therefore reversed, with costs to plaintiff. There being no disputed question of fact, the case is remanded, with direction to enter judgment in accord with this opinion.

Sharpe, C. J., and Bird, Fellows, Wiest, Clark, and McDonald, JJ., concurred.

Justice Steere took no part in this decision.