530

532

Herrick, Smith, Donald & Farley and Malcolm Donald, all of Boston, Mass., and Venable, Baetjer & Howard and Harry N. Baetjer, all of Baltimore, Md., for plaintiffs.

Simpson, Thatcher & Bartlett and Park Chamberlain, all of New York City, and Semmes, Bowen & Semmes, Richard F. Cleveland and Edwin F. A. Morgan, all of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit in equity brought by the individual members of a bondholders' protective committee as holders of $1,321,000 of the first mortgage 5 per cent. bonds of Grand Rapids, Grand Haven & Muskegon Railway, which have been in default as to principal since July 1, 1926, and as to interest since January 1, 1926; the railway company having been in receivership since July 28, 1926. The bill of complaint seeks a decree adjudging the defendant, the United Light & Power Company, as stockholder of the railway company, liable to the plaintiffs in an amount equal to the face value of the bonds held by the plaintiffs, together with interest since the date of default of its payment, less such amount as may be paid on account of these bonds out of the receivership estate of the railway company. The basis of the suit is an alleged statutory liability under sections 23 and 24 of the Street Railway Act of Michigan (Act No. 35 of the Public Acts of 1867) under which the railway company was organized (now sections 11313 and 11314 of the Compiled Laws of Michigan 1929). Service cannot be had upon the defendant in Michigan. The case is now before the court on defendant's motion to dismiss the bill of complaint, which motion admits the truth of the fact allegations in the bill, but challenges the sufficiency of these allegations to state a cause of action.

The grounds for the motion may be summarized as follows: (1) That the alleged cause of action is based upon a statutory liability created by the state of Michigan for the violation of which an exclusive remedy is provided, enforceable only in the courts of Michigan; that this court, therefore, has no jurisdiction to entertain the present suit; and that the plaintiffs have failed to allege compliance with the conditions specifically prescribed in the Michigan statutes for ascertaining and enforcing liability. (2) That the present suit is barred by plaintiffs' laches and by limitations. (3) That the deed of trust, pursuant to which the bonds held by the plaintiffs were issued, provides in its immunity clause that the obligation evidenced by the bonds is, and shall remain, solely a corporate obligation, and thus specifically prohibits recourse upon the obligation against any stockholder or director of the corporation and waives any statutory liability such as the one here sought to be imposed. (4) That the alleged cause of action is one that does not survive and is not assignable under the laws of Michigan, and that, therefore, the plaintiffs are not the real parties in interest and cannot bring the present suit.

The material facts in the bill of complaint (and in the amendment thereto which was allowed to be filed over the defendant's objection), and which are admitted by the motion, may be summarized as follows: The plaintiffs are citizens of Massachusetts and Pennsylvania, and the defendant company is a Maryland corporation. On March 6, 1899, Westinghouse, Church, Kerr & Co., engineers and contractors, brought about the organization, under Michigan law, of the Grand Rapids, Grand Haven & Muskegon Railway Company with an ultimate capitalization of $1,200,000, consisting of 12,000 shares of common stock of the par value of $100 each. Thereafter the railway company issued a

series of first mortgage bonds, dated May 1, 1901, in the aggregate sum of $1,500,000, maturing July 1, 1926, and bearing interest payable semiannually, January 1st and July 1st, at 5 per cent. per annum, secured by deed of trust. All of the stock and bonds of the railway company were issued prior to 1905 and are now outstanding.

The railway company was authorized to own and operate an interurban system in the state of Michigan and for that purpose acquired its necessary properties from Westinghouse, Church, Kerr & Co., in exchange for its entire capital stock and bonds. These bonds were sold by the Westinghouse Company to the public and it is the latter's representatives, the members of the bondholders' protective committee, who are plaintiffs in the present suit to the extent of $1,321,000, principal amount of these bonds. The actual cost of the railway and its equipment did not exceed $1,500,000, although its value on the books of the company was $2,700,000, or the exact equivalent of the par value of the amount of the bonds and stock. In 1912 Westinghouse Company sold all of the stock of the railway company to the United Light & Railways Company of Maine for $300,000, and transferred all of it to the latter company, with the exception of nine qualifying shares of directors. This latter company continued in the ownership of the stock until towards the close of the year 1923, when it caused the defendant company to be organized, and with the consent of stockholders, transferred to the defendant company all of its assets and, in return, the defendant company assumed all of its liabilities and issued its own preferred and common stock for distribution to the stockholders of its predecessor, United Light & Railways Company, there being no other consideration paid by the defendant company. The officers and directors of both companies were substantially the same, and the one had the same stockholders as the other, and merely continued the business of the other. The transfer left the United Light & Railways Company without any assets, and it was thereafter dissolved under the laws of the state of Maine, pursuant to which it had been organized. At the time of transfer, the United Light & Railways Company owned various public utility companies. It had more than $17,000,000 of preferred and common stock outstanding; gross earnings of more than $12,000,000, and net earnings, after deductions for taxes, insurance and maintenance, of more than $4,000,000. It owned properties, including those of

its subsidiaries, valued at more than $58,000,000.

As part of this reorganization, the defendant issued its own bonds secured by a first and refunding mortgage under which the securities of the defendant's subsidiary companies, including the railway company, were pledged, and pursuant to which the defendant agreed to pay all indebtedness of any such company so long as it remained one of its subsidiaries, by issuing its own bonds or otherwise; and the mortgage also provided that under certain terms and conditions the securities of any subsidiary might be sold, in which case it would cease to be a subsidiary.

Between December 13, 1912 and December 23, 1923, that is, during the period that the stock was owned by the predecessor company of the present defendant, that company received on this stock sixteen dividends aggregating $579,000. In May, 1925, the defendant sold all of the securities of the railway company, including all of its stock, $6,000 of its first mortgage bonds and its promissory notes owned by the defendant aggregating $417,700, for $25,000, to United Motors Products Company, a corporation of which the then president of the defendant was also an officer, large stockholder, and a dominant factor. As late as December, 1923, the defendant's predecessor had received from the railway company a dividend (which is included in the aggregate sum of $579,000 above referred to) of $30,000.

On July 28, 1926, as a result of foreclosure proceedings under the trust indenture securing the bonds, the railway company was placed in receivership by the United States District Court for the Western District of Michigan, Southern Division, and on December 18, 1926, the receiver, the Grand Rapids Trust Company of Grand Rapids, Mich., brought a proceeding in that court ancillary to the foreclosure proceedings, whereby it sought to recover from the defendant the aforementioned dividends, alleged to have been illegally paid, because paid either in impairment of the capital of the railway company, or at times when the railway company was, or by virtue of such payment had been rendered, insolvent. That court decided, August 18, 1931, 7 F. Supp. 511, that so much of those dividends as were paid on December 20, 1922, and December 23, 1923, had been paid in impairment of capital and judgment was rendered in the receiver's favor for the amount of such dividends with interest, together with certain management, contractor's, and engineering fees found also to have

534

been illegally paid. An appeal from this judgment is now pending before the United States Circuit Court of Appeals for the Sixth Circuit.

The provisions of the Street Railway Act of Michigan heretofore referred to, upon which the present suit is predicated (Sections 23 and 24 of Act No. 35, Public Acts of 1867, now sections 11313 and 11314 of the Compiled Laws of Michigan 1929) are as follows:

"Sec. 23. If the directors of any company formed under this act shall declare or pay any dividend when the company is insolvent, or the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they and all stockholders who shall knowingly accept or receive such dividend, shall be jointly and severally individually liable for all the debts of such company then existing, and for all that shall be thereafter contracted while they shall respectively continue stockholders or in office.

"Sec. 24. But no suit shall be brought against any individual stockholder or stockholders, for any debt of such company, as provided in the last two (2) preceding sections, until judgment on the demand shall have been obtained against the company, and execution thereon returned unsatisfied in whole or in part, or until the company shall have been dissolved; and any stockholder who may have paid any debt of such company, either voluntarily or by compulsion, shall have a right to sue and recover of such company the full amount thereof, with interest, costs and expenses; and any such stockholder who may have paid as aforesaid, shall have a right to bring an action against and recover of the rest of the stockholders, or any one (1) or more of them, the due proportion thereof which such stockholder or stockholders ought to pay; and if such action for contribution shall be brought against more than one (1) stockholder, the judgment and the execution thereon shall specify the amount to be recovered and collected from each defendant."

It will thus be seen that this is a suit not to recover dividends claimed to have been illegally declared and paid, but a suit based upon a statutory liability which imposes upon a stockholder of a corporation liability for all of that corporation's debts, in the event that such stockholder knowingly receives any dividend paid in impairment of its capital. It is contended that the relationship between the two United Companies was such as to make the second company, namely, the defendant, within the contemplation of the Michigan statute which is the basis of the suit, the same as the first company, namely, the United Light & Railways Company, with respect to the receipt of the dividends, and that, therefore, whatever liability may have rested upon the first company falls upon the defendant. With this contention we agree. The principle is too well established to require discussion. See Hibernia Ins. Co. v. St. Louis & New Orleans Transp. Co. (C. C.) 13 F. 516; Id., 120 U. S. 166, 7 S. Ct. 550, 30 L. Ed. 621; Farmers' State Bank in Merkel v. United States (C. C. A.) 62 F. (2d) 178; Alden v. Wright, 175 App. Div. 692, 162 N. Y. S. 668; Quinn v. American Bankers' Assurance Co., 183 Mo. App. 8, 165 S. W. 823; Stanford Hotel Co. v. Schwind, 180 Cal. 348, 181 P. 780.

Analyzed in more detail, the primary features of this legislation may be described as follows: The liability imposed is not upon all stockholders equally, but only upon such stockholders as accept dividends with knowledge of their wrongful payment. Nor is the liability imposed upon any stockholder because he happens to be such at the particular time, but is imposed because of the wrongful withdrawal of capital. Nor does the date of creation of the corporation's debt, nor the date when it falls due, have any controlling effect upon the liability of the stockholder for such debt. If he has knowingly accepted the dividend wrongfully paid, by the express terms of the statute he becomes liable for debts then existing, despite the fact that they were created before he acquired his stock, and he also becomes liable for debts thereafter contracted as long as he remains a stockholder, although in either case the debt may not fall due until after he has ceased to be a stockholder. Defendant, however, denies plaintiffs' right to invoke this statute, maintaining: (1) That if there is any liability on defendant's part, it must be because of Act No. 141 of the Public Acts of 1877 of Michigan which, as defendant asserts, provides an exclusive remedy which can be enforced only in Michigan; (2) that section 19 of chapter 73, section 2161 of the Compiled Laws of 1857 of Michigan (now section 10161 of the Compiled Laws of 1929) is not applicable to give force to plaintiffs' claim that sections 11313 and 11314 may be invoked by a bill in equity, brought in this court; and further that even if section 19 of chapter 73 (section 2161) of the Compiled Laws of 1857 is applicable, then it is also an exclusive remedy, enforceable only within the state of Michigan; and (3) that the statutory liability created by sections 11313 and 11314 is penal in character

and therefore can only be enforced in Michigan. Unfortunately, in spite of the age of the statutes in question, there appears to be no decision of the Supreme Court of Michigan which directly construes them and determines their scope. Also, the corporation laws of Michigan are much in need of revision and clarification, existing ambiguities producing vexatious results.

Taking up these three arguments in the order named, Act No. 141 of the Public Acts of 1877 embraces thirteen sections, now Compiled Laws of 1929, sections 14480–14492 which need not be quoted here because their salient features may be summarized as follows. In the first place, the act is entitled one to "Provide for the enforcement of the individual liability of stockholders of corporations." This is followed by the first section (14480) which provides that, "Whenever, by the constitution or laws of this state, the stockholders of any corporation are individually liable for any debts of such corporation, the remedy for the enforcement of such liability shall be as hereinafter prescribed, and not otherwise," and then follows the proviso that the act shall not apply to labor suits.

Defendant relies upon the above-quoted language for its assertion that the statute is intended to embrace all types of stockholders' liabilities, and therefore provides an exclusive remedy. There is considerable force to this argument. The language is, on its face, clear, and ordinarily its meaning would not be open to question, but the fact remains that as late as 1929, the compilers of the Michigan statutes, appointed expressly for that purpose by the state Legislature, considered that the other sections under which the present suit is brought, providing for a remedy of a different and more flexible character, had not been repealed. As originally enacted, Act No. 141 of the Public Acts of 1877 carried a section which is omitted in the Compiled Laws of 1929, and which provided that "all acts or parts of acts inconsistent with this act, or giving any other or different remedy, or form of remedy, are hereby repealed." (Section 14.) By the well-founded rules of statutory construction the first part of this proviso, namely, the repeal of inconsistent acts or parts of acts, would result without the need for any statutory provision to this effect. However, the latter part, that is, the repeal of any act or parts of acts giving any other or different remedy or form of remedy, would not necessarily take place without such express proviso found in the act itself, or as a necessary result of the only proper interpretation that

could be put upon its language. Therefore, we are unwilling to accept the language of section 14480 in its completely literal meaning without a full analysis of the character of the remedy provided in the succeeding sections, and of the differences which exist between that remedy and the remedy provided for in sections 11313 and 11314 which, as we have seen, the compilers, in spite of the sweeping character of the language contained in section 14480, have considered still in effect.

Section 14481 provides that before liability can be enforced a judgment against the corporation must be recovered and execution thereon returned unsatisfied in whole or in part. No alternative condition precedent is specified. Section 14482 provides for a court order requiring the secretary of the corporation, within a certain time, to file a list of stockholders who were such "at the time the debt for which such judgment was recovered, accrued." Section 14483 provides that upon filing of such list of stockholders, the creditor may file his petition setting forth: (1) That he has obtained the necessary judgment; (2) that execution thereon remains unsatisfied in whole or in part; (3) that the persons named in the list of stockholders were stockholders on the date the debt accrued for which judgment was rendered; and (4) the nature of the consideration received by the corporation. The remaining sections are purely procedural and relate to the appearance of the stockholders cited to appear, the joining of issue, trial, judgment, execution, and contribution by one stockholder at the instance of another who may have paid more than his pro rata share of the judgment.

The following differences between the provisions of the Act of 1877 and sections 11313 and 11314 are obvious: First, the Act of 1877 requires the filing of a list of all stockholders, whereas the other imposes liability merely upon those who have knowingly received a dividend improperly paid. Second, only those stockholders may be proceeded against under the Act of 1877 who were such on the date when the debt accrued for which judgment against the corporation was rendered, whereas, as we have seen, the accrual date of the debt has nothing to do with determining the liability of the stockholder under sections 11313 and 11314, because under these sections, stockholders who knowingly receive an improper dividend become liable for all debts of the corporation then existing or thereafter created while they remain stockholders.

We have no doubt that the phrase "the debt for which such judgment was recovered, accrued," as used in the Act of 1877, refers to a debt of the corporation, and that the word "accrued" therein used is to be construed as meaning "fell due." United States v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131. In the present case, the bonds fell due on July 1, 1926. But no dividends were in fact paid after the year 1923. In 1925, as appears by the amended bill of complaint, the defendant company sold all of the stock of the railway company on which the dividends were wrongfully paid, so that, at the time the bonds matured, the defendant owned no stock at all. Thus, the result is that if plaintiffs, as defendant contends, are relegated to the Act of 1877, the supplying of a list of stockholders who were such when the debt accrued, namely, in 1926, would exclude any stockholder who received the dividends in question. Similarly, if the word "accrued" is to be taken as referring to the date on which the indebtedness was "created" or was "incurred," the list of stockholders would comprise only those who never received any of the dividends in question since payment of them was not commenced until 1912, and the bonds were issued and the obligations created by them in 1901. The argument of defendant that the word "accrued" should be taken as meaning "accrued against the stockholders" is not tenable, because the judgment referred to in the statute means too clearly for any argument that it is a judgment against the corporation and, therefore, the debt on which the judgment is recovered must be a debt of the corporation. But, as plaintiffs contend, even if the word "accrued" were to be construed as contended for by defendant, the Act of 1877 would completely fail to cover the present situation, for the reason that the debt cannot accrue against the corporation until it falls due, and it cannot accrue against a stockholder before it accrues against the corporation. In other words, the debt cannot accrue against a stockholder until it falls due against the corporation, and only then is it enforceable against the stockholder, because the stockholder's liability is secondary in character. The statutory liability upon which the present suit is based does not become enforceable against a stockholder until one or the other of the conditions expressed in the statute is complied with, namely, execution on a judgment must be returned unsatisfied, or a dissolution must occur, before a creditor has a right of action directly against a stockholder. The stockholder's liability does not become fixed or ac-

crue when he accepts an improper dividend, because the corporation may pay the debt before any suit is brought by a creditor, in which event, the stockholder receiving the improper dividend would be relieved under this statute despite his wrong doing.

Furthermore, the Supreme Court of Michigan has in fact said that, by its terms, the Act of 1877 limits recovery to those stockholders who can be reached with process within Michigan. See Grand Rapids Savings Bank v. Warren, 52 Mich. 557, 18 N. W. 356. There, under a Michigan banking statute passed prior to Act No. 141 of 1877, it was held that the estate of a nonresident stockholder in a bank was ratably liable for debts of the bank that matured before the passage of that act, and, therefore, to such debts the limitations imposed by that act as to service within the jurisdiction, did not apply. The court said (pages 562, 563 of 52 Mich., 18 N. W. 356, 359): "If the act of 1877 is to be applied to these demands, it takes away the right as to all the stockholders who are nonresidents, unless they voluntarily come to the state, so that process may be served upon them. It also enables any resident stockholder to escape liability by absenting himself from the state, so that process may not be served. And, apparently, it takes it away as to all estates of deceased stockholders. But an act which could have this effect would be clearly inoperative, at least, as to the cases in which its enforcement would release parties before liable, because it would to that extent impair the obligation of contracts. It would be inoperative, therefore, as to this estate."

We believe, therefore, that plaintiffs' contention is reasonable, namely, that the Act of 1877 was intended to apply to that large, and most commonly recognized class of liabilities, namely, that class in which stockholders are made liable merely because they are stockholders, and that it should not also be construed as applicable, as are sections 11313 and 11314, to a liability which depends upon what the stockholders do, upon their malfeasance, that is, the receipt by them, knowingly, of dividends improperly paid, unless such intent clearly appears from the text of the statute, or from the circumstances surrounding its enactment. The object sought to be reached by any given piece of legislation may very well limit and control the literal import of the words or phrases actually employed. Rector, etc., of Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Sorrells v. United States, 287 U. S. 435, 448, 53 S. Ct. 210, 77 L. Ed.

413. While in the present case there is no question of a statute's retroactive effect, or of the impairment of a contractual obligation, because both statutes here in question were enacted many years prior to the creation of any liability that may exist under either of them, what the court said in the Grand Rapids Savings Bank Case is controlling in an interpretative sense.

■ The conclusion here reached finds support in the doctrine of ejusdem generis, that is to say, where, after an enumeration, the statute employs some general term to embrace other cases, the other cases are to be understood as cases of the same general sort as those named. We find this doctrine applied in Michigan to a somewhat similar use of the word "otherwise" (as found in section 14480 of the Compiled Laws of 1929), in another Michigan statute, in the case of Jacobs v. E. Bement's Sons, 161 Mich. 415, 126 N. W. 1043. There it was held that a corporation, which was decreed to be dissolved, as a result of voluntary proceedings, did not survive for three years under section 8534, 3 Compiled Laws of Michigan, 1897 (now section 9975, Compiled Laws of Michigan, 1929, hereinafter referred to), although that section is applicable to "all corporations whose charters shall expire by their own limitation or shall be annulled by forfeiture or otherwise, * * *" because construed to relate to involuntary and not to voluntary dissolution, in spite of the inclusion of the phrase "or otherwise." In the present case the only difference is that the "enumeration," that is, the description of what the statute is intended to include, follows, instead of precedes, the general term which includes the word "otherwise."

The cases cited by defendant in support of its contention are not apposite, because they have no real relation to the statutes here in question. Therefore, it becomes unnecessary to review them. Plaintiffs rely upon the case of First National Bank v. A. Heller Sawdust Co., 240 Mich. 688, 216 N. W. 464, and we are of opinion that this case does, at least inferentially, support plaintiffs' contention, and it appears to be the only decision in Michigan to which we have been referred, or which we have found which bears closely upon the precise situation here presented. In that case a creditor sought to recover against a stockholder under section 10018 of Compiled Laws of Michigan of 1929, which provides as follows: "If the capital stock of any corporation shall be withdrawn, and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be jointly and severally liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to him or them respectively." The creditor had sold his stock to the corporation at a time when it had no surplus. The court held that the stockholder was liable to the plaintiff creditor for the amount of money so paid, and that the solvency of the corporation at the time the stock was sold was neither controlling nor material.

The contention was made in that case, but overruled, that the creditor should first exhaust his remedy against the corporation, the court pointing out that under section 10018 it was not "necessary for a creditor to first exhaust the liability of the corporation and collect from it as far as possible, as he is required to do in the case of labor claims." Page 695 of 240 Mich., 216 N. W. 464, 466. It is true, as argued by defendant in an attempt to distinguish this Michigan decision, that the statute there in question does not create a liability for debts of the corporation except to the extent that stockholders may have made withdrawals from the corporation. Nevertheless, the primary object of the statute, like the object of the Act of 1867, is to prevent depletion of corporate resources by impairment of capital. As the court said, at page 694 of 240 Mich., 216 N. W. 464, 466: "The statute * * * in effect creates in the hands of the stockholder a trust fund for the benefit of then existing creditors of the corporation to be turned over to them on proof of their demand. The purpose of the statute, readily apparent, is to prevent depletion of the corporate resources by the withdrawal of any part of its capital stock, thus injuring the rights of existing creditors by lessening the value of their claims and the probability of being able to enforce them."

This decision is especially important in that the court, by holding that the statute there in question, which was a statute involving a stockholder's individual liability, was valid and subsisting, gives basis for the inference that the Act of 1877 is not to be taken so literally as to be *exclusive of all other remedies in all kinds of liabilities of individual stockholders as the first section of this act declares,* because section 10018 *did create* an individual stockholder's liability to a creditor of the company for *debts* due him by the company, albeit such liability, being limited to the amount the stockholder had received for his stock, was different from that created by the Act of 1877, which was not re-

ferred to by the court, and by not referring to the Act of 1877 in its opinion, we must assume that the court considered it inapplicable, and rightly.

While there appear to be no decisions of the Supreme Court of Michigan construing the effect of Act No. 141 of the Public Acts of 1877 upon sections 11313 and 11314, parenthetically, it is not inappropriate to direct attention to the case of Foster v. Row, 120 Mich. 1, 79 N. W. 696, 77 Am. St. Rep. 565, decided in 1899. This case upheld the individual liability of stockholders of insolvent Michigan banks by a bill in equity for the benefit of its depositors, prescribed by section 46 of Act No. 205 of the Public Acts of 1887. Although this legislation was of course subsequent to Act No. 141 of the Public Acts of 1877 with which we are here concerned, the decision is apposite at least to the extent of showing that enforcement of individual liability of stockholders is recognized in Michigan apart from the method of liability prescribed in the 1877 law.

We now turn to the next argument of defendant that section 19 of chapter 73 (section 2161) of the Compiled Laws of 1857 (now section 10161 of the Compiled Laws of 1929 of Michigan) is not, as plaintiffs contend, applicable as a procedural statute for the present suit, but that if it is applicable, it, like the Act of 1877, is exclusive as to remedy and can be enforced only in Michigan. Section 10161 reads as follows: "When the officers or members of a corporation, or any of them, are liable for any debts of the corporation, or for any acts of such officers or members, respecting the business of the corporation, and also when any of the said officers or members shall be liable to contribute, for money paid by any other or others of them, on account of any such debts or acts, the money may be recovered by a bill in chancery; and the said court may make all such orders and decrees therein as may be necessary to do justice between the parties."

This section was in effect at the time of the original enactment of sections 11313 and 11314, namely, 1867. It was section 19 of chapter 73 (section 2161) of the Compiled Laws of Michigan of 1857, and had been preceded by section 15340 which was section 15 of chapter 117 of the Revised Statutes of 1846. It is true that, except as to suits for contribution by one stockholder to another, the Act of 1877, in situations where it is applicable, would seem to have displaced the mode of remedy hereby provided, because with this exception the Act of 1877 seems to contemplate a law action. In fact, section 10161 has been

held to have been amended by the Act of 1877, but not repealed. See Ripley v. Evans, 87 Mich. 217, 49 N. W. 504. In any event, regardless of the extent to which section 10161 may have been emasculated by the Act of 1877 with respect to suits in Michigan, clearly it says nothing, either expressly or impliedly, about excluding proceedings in another State. This being true, we are unwilling to give to it a construction which would bring about such exclusion. The remedy it provides is not limited to a proceeding in which all creditors and all stockholders need be joined. Nor is there any requirement that the corporation be joined. Were this true, the remedy might be exclusive, because special in character. Indeed, once granted the remedy is not exclusive, even if neither Michigan nor the foreign jurisdiction had a procedural statute, and granting the suit is otherwise properly maintainable in either jurisdiction, then either jurisdiction may permit access to its own forums. As already shown, there is an obvious difference between a suit by a single creditor against a single stockholder or group of stockholders on a liability which, as here, is several in character, and a suit where a general settlement of corporate affairs is contemplated, including distribution of assets and an adjustment of all liabilities, for which jurisdiction over the corporation and a joining of all parties in the suit becomes necessary. See Stone v. Chisholm, 113 U. S. 302, 5 S. Ct. 497, 28 L. Ed. 991.

Defendant has stressed the point that the statute now invoked by the plaintiffs was enacted sixty-seven years ago, and that the reported cases of the state of Michigan fail to contain a single decision during all that period where anyone has sought to invoke the statute as have the plaintiffs. While this fact is noteworthy, it concludes nothing other than that a court outside of the state of Michigan should be careful to see that no construction is placed upon the statute which does violence to what its language, fairly construed, must be taken to have intended. We need not speculate as to the reason for this absence of state decisions, although it is regrettable and renders our task more difficult. It may, as plaintiffs assert, be due to the fact that, compared with other litigated questions involving corporations and their stockholders, willful dissipation of capital through payment of unearned dividends is relatively rare. Defendant cites a large number of statutes of other states and decisions construing them, in an effort to show that the Michigan statute cannot be given any extraterritorial effect, but in each of those cases

there was some differentiating feature in the particular statute which renders it unnecessary for us to do more than to point out that, for this reason, those decisions are not controlling and in most instances, not even mildly persuasive.

The statement is made that Michigan is the only state of a group, including Minnesota, Wisconsin, and Ohio, which did not amend its laws so as to give, expressly, an unrestricted remedy in cases of the present kind outside of its own forum, following decisions of the Supreme Court which denied the remedy in a foreign jurisdiction. In Finney v. Guy, 189 U. S. 335, 23 S. Ct. 558, 47 L. Ed. 839, the decisions affecting the statutes of various states are fully reviewed, and a principle, which had been consistently adhered to, was reaffirmed, to the effect that where the only statutory remedy provided by a state for the enforcement of stockholders' liability is a suit in that state by a creditor in his own behalf, and that of all other creditors against all the stockholders of the corporation or so many of them as could be served with process, such was exclusive of any other form of remedy. But we do not find the Supreme Court, any state court of last resort, or any federal court, in construing statutes of this nature, ever to have said or to have intimated that where, as in the present case, two separate statutes coexist in a given state, one providing for such exclusive remedy and the other providing for a remedy of a different and more flexible character, the former must dominate the latter and render it nugatory. See, also, Middleton Bank v. Toledo, Ann Arbor & Northern Michigan Railway Co., 197 U. S. 394, 25 S. Ct. 462, 49 L. Ed. 803.

The two cases decided by the Supreme Court of Michigan, Connors v. Carp River Iron Co., 54 Mich. 168, 19 N. W. 938, and Musselman v. Wright, 107 Mich. 639, 65 N. W. 569, which defendant stresses, seem to us to have no direct bearing upon the present inquiry. They merely hold that the Act of 1877 excludes resort to any other existing statutory remedy for the enforcement of labor debts in the hands of assignees. These suits arose before Act No. 141 of the Laws of 1877 was amended so as expressly to except "assignees" as well as the persons who performed the labor. In the first of these cases, the court said, at page 172 of 54 Mich., 19 N. W. 938, 940: "As the law stands now, the laborer, if he pursues the individual liability of the stockholder for labor performed, must pursue the remedy existing before Act No. 141 was passed. If he prefers not to

sue, but assigns his claim, such assignee must seek his remedy under Act No. 141, the same as creditors whose claims upon individual liability of stockholders are not based upon labor performed for the corporation." It is this language upon which defendant relies, but it is to be noted that the court expressly said that Act No. 113 of the Laws of 1877, which was relied upon, was directly repugnant to Act No. 141 which had been passed subsequently, and such clearly seems to have been the case, because the earlier act allowed suits against individual stockholders and the later act denied it. For the reasons which have been heretofore given, there is no such repugnancy between Act No. 141 of the Laws of 1877 and the sections of the Street Railway Act upon which the present suit is predicated, and in the absence of some unequivocal expression by the court of last resort of Michigan that the one supplants the other in a situation such as that here presented, we are unwilling to declare that it does.

■ Repeal by implication is never favored. United States v. Greathouse, 166 U. S. 601, 17 S. Ct. 701, 41 L. Ed. 1130; United States v. Noce, 268 U. S. 613, 45 S. Ct. 610, 69 L. Ed. 1116; Connors v. Carp River Iron Co. and Musselman v. Wright, supra. The peculiar facts of the present case amply justify adherence to this principle. The defendant cannot be reached by service of process in Michigan.

■ We have still to consider the further argument advanced by defendant that the statutory liability created by sections 11313 and 11314 is not enforceable outside of the state of Michigan, because penal in character. If it is penal, this argument is sound. The test whether a law is penal is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123; James-Dickinson Co. v. Harry, 273 U. S. 119, 47 S. Ct. 308, 71 L. Ed. 569. In the first of these cases, there was involved a New York statute which provided that a stockholder should be liable individually for the debts of the corporation until all of the capital stock was paid in and a certificate to that effect duly filed, and that a corporation's officers who signed a false certificate should be jointly and severally liable for all the debts contracted while they were officers. Under this statute, judgment was obtained in New York by a creditor of a New York corporation against one of its directors who had filed a certificate known to him to be false, stating that the whole of the capital stock had been paid in. Thereafter, this creditor brought a

540

bill in equity in Maryland against the same director and others to set aside, as fraudulent, the transfer of certain assets of this director, and to charge these assets with the payment of the New York judgment. In assuming jurisdiction, because the question was directly raised whether due faith and credit had been denied by one state to a judgment rendered in another state, and in reversing the opinion of the Court of Appeals of Maryland, the supreme Court held that the New York statute was not penal, and therefore could be enforced in Maryland.

▇ We consider the principle announced in this as controlling the present situation. The court said, at pages 674, 676, 677 of 146 U. S., 13 S. Ct. 224, 230: "The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. * * * The provision of the statute of New York now in question, making the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all its debts, is in no sense a criminal or quasi criminal law. * * * As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a several remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it cannot be enforced in a foreign state or country." See, also, Whitman v. Oxford National Bank, 176 U. S. 559, 20 S. Ct. 477, 44 L. Ed. 587; Western Nat. Bank v. Lawrence, 117 Mich. 669, 76 N. W. 105.

The New York statute involved in Huntington v. Attrill, was basicly similar to the statute on which the present suit is predicated. There, suit was allowed in the foreign jurisdiction on a judgment obtained in New York under the New York statute. Here, suit is brought in the foreign jurisdiction upon the Michigan statute. If the one is enforceable in the foreign jurisdiction, so must the other be.

Defendant admits that the statute is not penal in the international sense, but claims that it is in a more general sense, that is, that it provides penalties created by contract, and that since the Supreme Court of Michigan has stated that the statute is penal in character, that must control. But no case is found which actually so decides. In Breitung v. Lindauer, 37 Mich. 217, at page 225, the Supreme Court of Michigan said, in construing a Michigan statute requiring annual reports of the condition of certain corporations to be filed and providing that if the directors intentionally neglect to file them, they shall be liable for all debts of the corporation contracted during the period of neglect, that "we think it has been very generally if not universally held, under constitutional and statutory provisions such as exist in this State, making stockholders personally liable, that such liability was not penal in its nature; that the relation created between the stockholder and creditor was a contract relation, * * *" but then went on to distinguish the position of corporate directors and declared that their liability under the statute in question was in the nature of a penalty.

We now come to the second, which is, in fact, the major contention raised by defendant, namely, that the present suit is barred by limitations and by plaintiffs' laches.

▇ First, as to limitations, under sections 11313 and 11314, until the plaintiffs secured a judgment against the railway company and a return of execution unsatisfied, or until dissolution of the railway company, no cause of action against the defendant could arise. The maturity date of the bonds was July 1, 1926. On this date and not before, the bonds matured and fell due. Then, for the first time, under the terms of the mortgage indenture, a cause of action arose in favor of the bondholders to recover the principal of the bonds against the railway company. Immediately thereafter, proceedings were begun in Michigan to foreclose the mortgage and to realize upon all the assets of the company. These proceedings are still pending, but what has been done, or might have been done, by mortgage foreclosure is not controlling, because plaintiffs had a right to wait until dissolution of the railway company before proceeding under sections 11313 and 11314. Dissolution, in the unsuable sense, did not occur until June 16, 1931, at the earliest, as will shortly be explained. Less than thirteen months later, namely, June 27, 1932, the present suit was filed. Remedies, as distinguished from rights of parties, are

determined by the law of the forum, and statutes of limitations are part of the remedy and not of the laws affecting rights, unless the statute under which liability is to be enforced prescribes the period of limitation. However, there is no special, but merely a general, statute of limitations in Michigan. Therefore, the law of Maryland controls the present suit. Brunswick Terminal Co. v. National Bank (C. C. A.) 99 F. 635. Thus, the suit is well within the Maryland three-year statute of limitations (Code Pub. Gen. Laws 1924, art. 57, § 1), and that statute can begin to run against the stockholder, that is, against the one *secondarily* liable, only from the time secondary liability became enforceable, and such could not occur until either a judgment had been obtained against the corporation and returned unsatisfied, or until the corporation was dissolved, in the sense of becoming unsuable. In other words, in so far as Maryland law is involved, we are not concerned with the date when the primary liability commenced, that is July 1, 1926, except for the purpose of ascertaining that that liability still persists. Since it does still persist, we next determine when the secondary liability became enforceable, and date the Maryland limitations period from that time. Neither in Michigan nor in Maryland, nor anywhere else, could the stockholder be sued until one or the other event transpired which alone could give rise to the enforceability of that secondary liability. So when defendant complains that it is inequitable to allow the present suit in Maryland "to enforce a liability arising from six to sixteen years before," there is a confusion between the two types of liabilities. See Wegner v. Tower, 235 Mich. 610, 209 N. W. 802; Whitman v. Atkinson (C. C. A.) 130 F. 759.

The provision in section 11314 respecting dissolution was, we feel, not placed there for the purpose of giving a creditor the right to elect, in *all* cases, to wait until dissolution before bringing suit, but rather for the purpose of protecting him in those cases where dissolution occurs before the statute has run upon his right to sue on the primary obligation. Such is the case here, and therefore it was proper to postpone bringing suit until after dissolution of the railway company. If plaintiffs had allowed the statute of limitations to run against the railway company, and thereafter dissolution of the company had occurred, their claims against both the company and the stockholders would be barred because with the right against the one primarily liable having been taken away, the secondary liability would also cease. But in the present situation, the dissolution of the company took place when the debts of the company were still enforceable against it, the Michigan statutory limitation, which is six years, not having run. As we have seen, the cause of action against the corporation accrued to bondholders on July 1, 1926. Thereafter, they had the right to sue in Michigan at any time within six years, except for dissolution, the effect of which was to curtail this period by approximately twelve and one-half months, as will be presently explained, and a judgment secured in such suit and returned unsatisfied would have fulfilled one of the conditions of section 11314. But instead, the present plaintiffs elected to wait, as they had a right to do, until June, 1932, by which time the corporation had been dissolved, but the statute had not yet run.

Defendant urges that the railway company was dissolved on July 1, 1926, because it then failed to pay its bond indebtedness, or was dissolved, at the latest, when its charter actually expired. The first point requires no discussion, because the term "insolvent" or "failure" cannot be substituted for the word "dissolved." In Michigan, insolvency, before amounting to dissolution, is dependent upon a judicial proceeding. See section 15333 of the Compiled Laws of 1929; People v. Bank of Pontiac, 12 Mich. 527; Heap v. Heap Manufacturing Co., 97 Mich. 147, 56 N. W. 329. See, also, Jacobs v. E. Bement's Sons, 161 Mich. 416, 126 N. W. 1043.

Turning to the second point, namely, that the company was dissolved March 6, 1929, the date when its charter expired we find this to be equally untenable because of the three year provision for extension of the corporate life after the date on which the charter expires. This is controlled by sections 10160 and 9975 of the Compiled Laws of 1929, the first of which is as follows: "All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate, for the term of three (3) years after the time when they would have been so dissolved, *for the purpose of prosecuting and defending suits by or against them,* and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established." (Italics inserted.) The other section, No. 9975, is as follows: "All corporations whose charters shall expire by their own limitation or shall be annulled by forfeiture or other-

542

wise, shall nevertheless continue to be bodies corporate, for the further term of three (3) years, for the purpose of prosecuting and defending suits by or against them, if not in default under chapter two (2) of part five (5) of this act [which relates merely to filing reports and paying fees and which, in the absence of allegations to the contrary in the pleadings, we will assume the railroad company had complied with], and of enabling them gradually to settle and close their affairs, and to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations were organized: Provided, That whenever the number of directors of such a corporation whose charter has so expired shall at or before the beginning of or during said term of three (3) years by death, resignation or otherwise, be less than the full number of directors required or authorized by statute or the by-laws of such corporation, then and in that event a majority of the remaining, surviving directors or the sole surviving director, shall from time to time, during said period of three (3) years, have all the powers to act for such corporation under this section which are conferred upon or which exist in the board of directors of such corporation before the expiration of its charter or during said term of three (3) years."

It is important to note that the original enactment of section 10160 occurred in 1846 (section 8, c. 55, Revised Statutes Michigan, 1846), and that section 9975 is substantially the same as section 10160; also, that the corporation's life is expressly extended beyond the time when the corporation would otherwise have ceased to exist; in other words, that complete dissolution does not take place until the end of the extension period; until then it does not become an extinguished entity. See Grand Rapids Trust Co. v. Haney School Furniture Co., 221 Mich. 487, 191 N. W. 196, 27 A. L. R. 1020; Grand Rapids Trust Co. v. Carpenter, 229 Mich. 582, 201 N. W. 882.

It is true the aforegoing sections were repealed by section 191 of Act No. 327 of the Public Acts of 1931, approved June 16, 1931, but the present suit, commenced in June, 1932, was brought well within three years from June 16, 1931, the earliest possible date on which the railway company became unsuable.

It is unnecessary to analyze the numerous cases cited by defendant, because they are not applicable to the present situation. They deal with the right to sue a corporation after it has been dissolved, or with the right to sue a stockholder where the enforceability of the liability of the stockholder is coincident with the enforceability of the liability of the corporation, and not with a situation like the present, where the liability of the stockholder can only be enforced after either one of two events has occurred, the election with respect to which of these events shall control being reposed in the creditor under conditions such as exist in the present case. For example, when the defendant asserts that no case can be found where the courts of Michigan have countenanced a suit brought after the expiration of the three-year period, during which corporate life is extended, such is correct if reference is had to suits against the corporation itself, and it is cases of this kind that are cited in support of this statement.

It may be argued that when the words "for the purpose of prosecuting and defending suits by or against them" are used in sections 10160 and 9975, they are intended to refer to suits instituted prior to the beginning of the three year period, that is, before the charter has expired, and not thereafter. Inferentially, support may be found for this contention in the fact that the General Corporation Act of the State of Michigan now in force (section 75, Act No. 327 of Public Acts of 1931) does provide that with respect to any action begun or commenced by or against the corporation prior to any such expiration or dissolution, and with respect to any action begun or commenced by the corporation within three years after the date of such expiration or dissolution, such corporation shall only for the purpose of such action so begun or commenced, be continued a body corporate beyond the three year period and until any judgment shall be fully executed. However, this General Corporation Act is by its terms not applicable to street railway corporations. Therefore, in the absence of some construction by the Supreme Court of Michigan limiting the meaning of the language employed in sections 10160 and 9975, there would seem to be no ground for giving it the narrower construction. Indeed, the more reasonable interpretation of this language is that those who have filed suits before dissolution should not be put in a preferential class as against those who, perhaps through entirely justifiable ignorance of the exact state of a corporation's condition, have seen no immediate cause for bringing suit. Fairness would seem to require that all be put upon a parity, if the underlying purpose of the statute is to be fully

carried out, which is that there shall be a reasonable length of time given for the corporation to wind up all of its affairs, which must include liquidation not merely of debts which are due to it, but of debts which it owes, with no other limitation than that they shall not have been barred by some general or specific statute of limitations applicable to them.

What has been said respecting limitations should be adequate also to refute defendant's argument that the present suit is barred by plaintiffs' laches. Suffice it to say in addition that federal courts of equity are not precluded from either shortening or extending a state statute of limitations, if peculiar circumstances so warrant. Southern Pacific Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099. In the present case, the history of the litigation diligently inaugurated by both the trustee under the mortgage, and by the equity receiver—all on behalf of the present plaintiffs and their co-creditors—contradicts the need for shortening it.

Although the question has not been directly raised, it is appropriate to consider at this point whether the present suit is barred by reason of the fact that: (1) The receiver has brought suit against this same defendant for the recovery of the dividends alleged to have been illegally paid, for part of which he has been, in fact, allowed to recover by the District Court for the Western District of Michigan, Southern Division, which is now on appeal; (2) foreclosure proceedings under the mortgage have been instituted. Whether either one of these proceedings is a bar to the present suit depends upon whether the institution of either of them amounts to an election of remedies or to an estoppel. The doctrine of waiver by election of remedies does not apply unless there exist three things: (1) There must be, in fact, two or more coexisting remedies between which the parties have the right to elect; (2) such available remedies must be inconsistent; and (3) the party must by actually bringing his action or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. Applying this test to the present situation, it becomes apparent that there has been no election of remedies such as to bar the present suit, because the remedies are not inconsistent. The foreclosure proceedings are against the res, and while brought on behalf of the bondholders, cannot obviously prevent the bondholders themselves from exercising the right which is given to them by the statute to hold the stockholder, that is the defendant, individually liable. Similarly, although the receiver in bringing the suit in equity—which was not based upon any statute—against the defendant for recovery of dividends alleged to have been illegally paid, did so on behalf of all creditors, including the bondholders, the receiver cannot destroy the independent right of the bondholders to exercise their statutory remedy against the defendant, certainly not without some evidence, which is totally absent, that the bondholders authorized the receiver's suit in substitution of their independent remedy. Of course, in any event, whether by virtue of one suit or several, the bondholders cannot ultimately recover more than is actually due them as bondholders. There is no evidence that they are seeking more than this. In fact, the prayer of the bill of complaint expressly asks for a decree "less such amount as shall be paid on account of said bonds' principal and interest, out of the receivership estate of said railway company * * *."

If it be argued that, even assuming that there has been no waiver by election of remedies, nevertheless the present suit is barred by estoppel, suffice it to say that the party invoking the doctrine of estoppel must show that he will suffer some material disadvantage unless his adversary is required to abide by his election, upon which reliance has been placed. Thus tested, we find no reliance in the present case by the defendant upon any action on the part of the plaintiffs. Therefore, although it is true that estoppel may arise even as between consistent remedies, whereas in order that waiver by election must operate as a bar the remedies must be inconsistent, nevertheless the facts in the present case do not support estoppel any more than they do an election, in the legal sense.

We now turn to the next contention advanced by defendant, namely, that the present suit is barred by the nonrecourse clause contained in the mortgage.

Each of the bonds contains the customary unconditional promise to pay principal and interest at specified times. In article 19 of the mortgage is the following clause upon which defendant relies, which is a provision also common to mortgages of this kind: "No recourse under or upon any obligation, covenant or agreement contained in this indenture, or in any bond or coupon hereby secured, or under any judgment obtained against the Railway Company, or otherwise, shall be had against any incorporator, stockholder, officer or director of the railway company, or of any successor corporation, either

directly or through the Railway Company, by the enforcement of any assessment or by any legal or equitable proceeding by virtue of any statute or otherwise. The indenture and the obligations hereby secured are solely corporate obligations, and no personal liability whatever shall attach to or be incurred by the stockholders, directors or officers of the railway company, or of any successor corporation, or any of them, under or by reason of any of the obligations, covenants or agreements contained in this indenture, or in any of the bonds or coupons hereby secured, nor shall any such personal liability be implied therefrom; and any and all personal liability of every name and nature, whether at common law or in equity, or by statute or constitution, of every such stockholder, officer or director is hereby expressly waived as a condition of and consideration for the execution of this indenture and the issue of such bonds and coupons."

Plaintiffs contend that this clause affords the defendant no defense for the following three reasons: (1) The nonrecourse clause applies only to the covenants and agreements contained in the mortgage and does not limit or affect the absolute agreement to pay contained in the bond; (2) the defendant was not a party to the mortgage and is entitled to the protection of the nonrecourse clause only as an equitable defense, and since the present suit is based upon alleged fraudulent conduct, the defendant cannot assert this equitable defense because he does not come into equity with clean hands; (3) the nonrecourse clause, if construed to cover the present liability, would be void as against public policy since the parties cannot contract against future liability for fraudulent acts. The first of these arguments of the plaintiffs, namely, that the bond does not so incorporate the nonrecourse clause contained in the mortgage as to in any way limit the rights of the bondholder under his bond, we find it unnecessary to answer, although an analysis of the various recitals in the mortgage and the bond lend some weight to this point; nor is it necessary to answer the second point, because we believe that the last argument of the plaintiffs is controlling and supported by the weight of authority. That is to say, where, in a suit of this kind, which is based upon alleged fraudulent conduct of the defendant, we know of no principle of law which justifies holding that the defendant may rely upon a nonrecourse clause such as the one here in suit. In other words, it is not to be interpreted as operating as a waiver of liabilities not contemplated by the parties,

such as that for fraud. It refers rather to liabilities incurred in good faith. While there is somewhat of a dearth of authorities on this precise point, we believe that such decisions as do exist are virtually unanimous in support of the principle here advanced by the plaintiffs. In Small v. Sullivan, 245 N. Y. 343, 157 N. E. 261, this principle was upheld with respect to liability of directors of a corporation. In Walker v. Howell, 209 Iowa, 823, 226 N. W. 85, a similar result was reached with respect to corporate officers, and in Downer v. Union Land Co., 113 Minn. 410, 129 N. W. 777, the same result was reached with respect to stockholders. In all three of these cases, the nonrecourse clause was very similar in language to the clause here in controversy. We consider it unnecessary to quote parts of the opinions in any of these cases except the following from the Minnesota case at pages 415, 416, 417 of 113 Minn., 129 N. W. 777, 779:

"It is clear that the agreement contained in the bonds, which we have quoted, released the stockholders from any and all liability for the payment of the bonds imposed by the Constitution or statute, and from all liability whatever, in the absence of any element of fraud; that is, if they had then paid the full par value of their stock as represented by the issuance of it as full paid. This is not an action to enforce any constitutional or statutory liability of the defendant for the payment of the bonds; but it is, in effect, one to compel the defendants to make good, so far as may be necessary to satisfy the plaintiff's judgment against the corporation, their alleged representation, alleged to have been relied upon by him, that the assets of the corporation had been increased to the full par value of their stock, when in fact only one-half thereof had been paid.

"The question, then, in its last analysis, is whether such a liability was within the contemplation of the parties when the bond agreement was made, and did the plaintiff thereby waive such liability in case he might thereafter discover for the first time the facts upon which liability must rest? The right of a creditor to maintain such an action is settled by the repeated decisions of this court. * * *

"The basis of the action is not contract, but fraud, for the reason that: People deal with the corporation and give it credit on the faith of its stock, and they have the right to assume that it has a paid-in capital to the amount which it represents itself as having. If the representation is false, it is a fraud on creditors; and, in case the corporation be-

comes insolvent, equity will compel the holders of bonus stock, or stock not in fact paid in full, to make the representation good, by paying the balance due on their stock to the extent necessary to pay creditors whose debts were contracted subsequent to the issuing of the stock as fully paid, and who are presumed to have relied on the representation. It is the misrepresentation of fact in stating the amount of capital to be greater than it is in fact which is the basis of the liability of the stockholders in such cases. A certificate for paid-up shares in a corporation is simply a written statement in the name of the corporation that the holder thereof is a stockholder, and that the full par value of his shares has been paid to the corporation. If the shares in fact have not been so paid for, the certificate that they have been is a false representation that the assets of the. corporation have been increased to the amount of the par value of the stock so issued.

"The very basis of this action clearly indicates that the alleged liability sought to be enforced in this action was not within the contemplation of the parties at the time the bond agreement was made, and that it was not waived thereby. How can the plaintiff be said to have waived a liability, when he had no knowledge of the facts out of which the alleged fraud and consequent liability sprung? Is it reasonable to assume that the company or its stockholders intended by the agreement to guard against liability for fraud which from their viewpoint never existed and was not then claimed by any one? We hold that the agreement here in question does not constitute a waiver by the plaintiff of the alleged liability sought to be enforced by this action, nor a defense thereto."

The defendant refers to a number of other cases in which the waiver is held to apply, including Fidelity Trust Co. v. Washington-Oregon Corporation (D. C.) 217 F. 588; Babbitt v. Read (C. C. A.) 236 F. 42; Id. (D. C.) 215 F. 395; but an examination of these cases discloses that fraud was not involved. The state cases relied upon by defendant such as Brown v. Eastern Slate Co., 134 Mass. 590, and Basshor v. Forbes, 36 Md. 154, similarly do not involve fraud. In Babbitt v. Read, much stressed by defendant, although the nonrecourse clause was held to control, the question there, unlike the one now before us, was simply whether bondholders could enforce a statutory liability imposed on certain of the stockholders for the benefit of general creditors, because of their having received their stock in payment for property transferred to the corporation at an overvaluation. The lower court failed to find fraudulent conduct and the appellate court, in affirming the lower court's decision, distinguished the facts from those in Downer v. Union Land Co., supra. See, also, Cheney v. Dickinson (C. C. A.) 172 F. 109.

We come now to the last of the four major contentions of the defendant, namely, that the bill of complaint sets forth a cause of action which, if valid, accrued to the bondholders themselves rather than to the plaintiffs, and that such cause of action is not assignable and does not survive, and that therefore the plaintiffs are not the true owners of the cause of action and are not the real parties in interest.

But this claim is untenable for various reasons which are so elementary that citation of authorities in support of them is scarcely necessary. First, the plaintiffs are trustees of an express trust, by virtue of the deposit agreement which became effective March 25, 1926, and as such hold full legal title to the bonds and are also prima facie owners of the bonds, because in bearer form. Thus the plaintiffs are creditors of the railroad company in their own right. Second, the statutory liability here sued on being secondary in nature, the cause of action to enforce the same accrued originally to the plaintiffs, and not to the bondholders. That is to say, the dissolution of the railway company occurred, as we have seen, at the earliest on June 16, 1931. Before either of these dates and, indeed, before July 1, 1926, when the mortgage became in default, and when the primary obligation on the bonds arose, the plaintiffs had become owners of the bonds.

As a matter of fact, this street railway statute is not the only survival in Michigan of early legislation giving this special remedy against stockholders where they have knowingly been a party to impairment of capital. It is not necessary to review or even to give citations for a large number of special acts which defined the different kinds of liability of stockholders in public utility companies, many of which have been repealed. Suffice it to say that: (1) The Michigan Constitution provides that stockholders of all corporations shall be liable for labor debts, article 12, section 4, constitution of 1908; section 10026, Compiled Laws, 1929. (2) That with respect to one group of corporations, stockholders have been made liable not only for labor debts but for debts due to other classes of special creditors. (3) In another group of corporations, stockholders have been made liable for all debts of the corporation, but the liability was limited to an

amount equal to the capital stock. And (4) in still another and more limited group of corporations, stockholders have been made liable for all debts as though they were partners. Then, in addition to all of the aforegoing, there came the even more limited group in which street railway companies fall, and which still includes train railway companies, where this special liability is imposed upon stockholders who knowingly participate in the impairment of the company's capital. See Train Railway Act, sections 11269, 11270, Compiled Laws of Michigan 1929. The provision imposing this liability upon train railways (section 11269) is identical in language with that in the Street Railway Act, which forms the basis of the present suit (section 11313), and while we find no application of it in any reported decision in Michigan, the companion section (11268) which is almost identical with the corresponding section of the Street Railway Act (11312) imposing liability upon stockholders for debts of the corporation for an amount equal to the amount of any unpaid stock in the company, and the procedural section (11270), which is identical with the corresponding section of the Street Railway Act (11314), has been construed by the Supreme Court of Michigan to the extent that it has been held not to support a claim for damages founded on pure tort. See Bohn v. Brown, 33 Mich. 257. This decision, however, was rendered in 1876. Note, also, that Judge Raymond refers to section 11313 in his decision, already discussed, and now on appeal, respecting recovery of the dividends.

Finally, defendant says that for this court to assume jurisdiction of the present suit would be unconscionable, because the recovery sought is out of all proportion to the obloquy of the defendant, and that it would result in the enforcement of an obsolete penal Michigan statute which could never be enforced in Michigan. But there are obvious adequate answers to these contentions. Assuming the relief provided by the Michigan statute to be of an extreme character, nevertheless, it is not the province of this court to rewrite the legislation in Michigan with respect to street railways, or to determine whether it has been wise. If, as is alleged, the defendant corporation or its predecessor, the two being, in law one and the same, fraudulently exploited, for its own gain, the railway company, there is nothing unconscionable in permitting the creditors of the railway company with whose money it was developed, to have an opportunity to prove, if they can, that such exploitation did in fact, take place. If it did, and if it impaired the railway company's ability to pay its creditors, there is nothing unconscionable in saying that the defendant shall suffer the full consequences to which such impairment in any way contributed, since the defendant, when it acquired the railway company's stock, did so subject to the terms of the statute, which it is presumed to know and to accept. Indeed, it would be more unconscionable to deny such creditors some remedy of this character, in the very home of the alleged offender, provided the Michigan statute is not penal in the sense that it cannot be enforced outside of the state of Michigan; and provided, further, that there is no merit in defendant's contention that the Michigan statute must be construed as having been repealed, although not by express language.

With respect to the alleged penal character of the statute, it is sufficient to refer to what has already been said, and to point out that the Supreme Court of Michigan has in fact declared that statutory provisions making stockholders personally liable are not penal. See Breitung v. Lindauer, supra. But even if that court had held otherwise, as the Supreme Court of the United States pointed out in Huntington v. Attrill, supra, the construction placed upon a statute of this kind by the highest court of the State is not conclusive, and it emphatically held, as we have seen, that a similar statute is not penal in the sense with which we are here concerned.

With respect to the argument that plaintiffs are seeking to enforce an obsolete Michigan statute which could never be enforced in Michigan, suffice it to repeat that there is no warrant for this assertion, in the absence of some Michigan decision to that effect. It is true that the lapse of so long a time without any reported case arising in Michigan requires, as has been previously stated, that courts in foreign jurisdictions should be fully satisfied that the right of action granted by such a statute still exists, and is one whose enforcement is not confined to the courts of the state of Michigan. Once having so determined, the argument of the defendant loses all force.

In addition to what has already been said, any apparent doubt as to the statutory provisions under which the present suit is brought still being in effect, is further diminished by the Michigan General Corporation Act, enacted in 1931, being No. 327 of the Public Acts of 1931. That act excepts from its operation a large number of corporations, both private and public utility companies, includ-

ing street railway companies, and provides that: "The provisions of this act shall not be construed to apply to such corporations excepting as any specific provision in this act made to expressly apply to any of the said classes of said corporations." Section 3. Among the provisions of this General Corporation Act is one imposing liability upon directors and stockholders for illegal dividends and distributions, providing as to stockholders that if they accept or receive any dividends or distributions not authorized by the act, they shall be liable to the corporation in the amount accepted. Section 48. The act also contains a repealing section (191) enumerating a large number of prior acts that are expressly repealed. It must be assumed that the Michigan Legislature in completely recasting, as recently as three years ago in one act, the General Corporation Laws of the state, which embraces 193 sections, duly considered these earlier provisions expressly relating to stockholders of street railway companies.

For the aforegoing reasons, the motion to dismiss the bill of complaint must be denied.

District Court, D. Maryland.
July 12, 1934.